230 P.3d 142 (2010)
168 Wash.2d 306
STATE of Washington, Respondent,
v.
Richard Edward SIBERT, Petitioner.
No. 79509-6.
Supreme Court of Washington, En Banc.
Argued February 10, 2010.
Decided February 25, 2010.
As Corrected April 1, 2010.
*143 Manek R. Mistry, Jodi R. Backlund, Backlund & Mistry, Olympia, WA, for Petitioner.
J. Bradley Meagher, Lori Ellen Smith, Liam Michael Golden, Lewis County Prosecutors Office, Chehalis, WA, for Respondent.
J.M. JOHNSON, J.
¶ 1 A jury convicted Richard Sibert of three counts of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver. He *144 challenges his convictions, arguing that it was error to fail to include the identity of the specific controlled substance in the "to convict" jury instruction and that it was error to fail to require the State to prove the identity of the substance to a jury. He also disputes his sentence, arguing that under Blakely[1] the State must prove beyond a reasonable doubt his prior convictions to a jury. Finally, Sibert challenges as erroneous the jury instruction with respect to "knowledge," which was given at trial.
¶ 2 We hold that it was not error to fail to include the specific identity of the controlled substance (methamphetamine) in the "to convict" jury instructions where, as here, those instructions incorporated the drug identity by reference to the charging document, which specified methamphetamine, and where that drug and only that drug was proven at trial. We also find Sibert's sentence to be appropriate, given that prior convictions need not be proven to a jury, and we reject his other claims. Accordingly, we affirm his convictions and sentence.

FACTS AND PROCEDURAL HISTORY
¶ 3 On three separate days during March 2004, an informant working with police officials purchased methamphetamine from Richard Sibert. The police subsequently obtained a warrant, searched Sibert's home, and found methamphetamine and other drug paraphernalia. The State charged Sibert with three counts of delivery of a controlled substance, two of which carried school bus route stop enhancements under RCW 69.50.435(1)(c). The State also charged Sibert with one count of possession of a controlled substance with intent to deliver.[2]
¶ 4 A jury found Sibert guilty of all charges, including the school bus route stop enhancements. At sentencing, the court calculated the standard range for Sibert's sentence (without enhancements) as 20 to 60 months, using the standard ranges under Drug Offense Seriousness Level II. The range was based on the court's finding that Sibert had a criminal history of convictions of possession of methamphetamine and possession of an explosive device. After taking into account the school bus route stop enhancements, the trial court sentenced Sibert to 64 months of total confinement.
¶ 5 Sibert appealed his convictions, raising four distinct issues for review. In an unpublished opinion, Division Two of the Court of Appeals affirmed the trial court on each issue. State v. Sibert, noted at 135 Wash.App. 1025, 2006 WL 3026124. Sibert appealed and we granted review. State v. Sibert, 163 Wash.2d 1059, 187 P.3d 753 (2008). For the following reasons, which focus on the two most credible issues Sibert raises, we affirm the Court of Appeals decision upholding Sibert's convictions and sentence.

ISSUES
¶ 6 1) Did the trial court err by failing to include the identity of the controlled substance in the "to convict" jury instructions for delivery and possession with intent to deliver a controlled substance?
¶ 7 2) Did the trial court err by failing to require the State to prove beyond a reasonable doubt the identity of a controlled substance before imposing a sentence based on that identity?
¶ 8 3) Was the "knowledge" jury instruction appropriate?

ANALYSIS
¶ 9 We review alleged error in jury instructions de novo. State v. Becklin, 163 Wash.2d 519, 525, 182 P.3d 944 (2008).

A. Identification of Controlled Substance

¶ 10 "The State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld." State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995). Therefore, "a `to convict' [jury] instruction must contain all of the elements of the crime because it serves as a `yardstick' by which the jury measures the evidence to determine guilt or innocence." State v. Smith, 131 Wash.2d 258, 263, 930 P.2d 917 *145 (1997) (quoting State v. Emmanuel, 42 Wash.2d 799, 819, 259 P.2d 845 (1953)). We are not to look to other jury instructions to supply a missing element from a "to convict" jury instruction. Id. at 262-63, 930 P.2d 917.
¶ 11 The identity of a controlled substance is an essential element where it increases the maximum sentence. State v. Goodman, 150 Wash.2d 774, 785-86, 83 P.3d 410 (2004). Under former RCW 69.50.401(2)(b) (2003), a conviction for possession with intent to deliver methamphetamine carried a maximum sentence of 10 years.
¶ 12 A conviction based on a different controlled substance may have resulted in a maximum sentence of five years. Therefore, the identity of the controlled substance in this case determined the level of the crime and its penalty, rendering it an "essential element" under the reasoning set forth in Goodman, 150 Wash.2d at 785-86, 83 P.3d 410; see also State v. Eaton, 164 Wash.2d 461, 468-70, 191 P.3d 1270 (2008) (Johnson, J., concurring).
¶ 13 "An instruction that relieves the State of its burden to prove every element of a crime requires automatic reversal." State v. Brown, 147 Wash.2d 330, 339, 58 P.3d 889 (2002). However, not every omission of information from a "to convict" jury instruction relieves the State of its burden of proof; only the total omission of essential elements can do so. Id. Under this line of reasoning, and for the reasons discussed below, it was not error to omit the name of the controlled substance from the "to convict" instructions.
¶ 14 The record establishes that both Sibert and the jury were on notice that the controlled substance crimes with which Sibert was charged involved only methamphetamine. The formal information charging Sibert repeatedly referred to the controlled substance at issue as "to-wit: Methamphetamine," which put Sibert on notice of the identity of the controlled substance that he was charged with delivering and possessing, as well as on notice of the maximum possible penalty for those crimes. Clerk's Papers (CP) at 12-14. Furthermore, each of the "to convict" jury instructions began by stating "[t]o convict the Defendant ... of the crime of Delivery of a Controlled Substance as charged. ..." CP at 40-42, 49 (emphasis added). This reference to the charging document impliedly incorporates the language "to-wit: Methamphetamine" into the "to convict" instructions.
¶ 15 Additionally, each "to convict" instruction listed the proper elements for the crime of unlawful possession of a controlled substance with intent to deliver: (1) unlawful possession, (2) with intent to deliver, (3) a controlled substance.[3]State v. Sims, 119 Wash.2d 138, 141-42, 829 P.2d 1075 (1992) (citing former RCW 69.50.401(a) (1979)). As a result, the jury convicted Sibert, as charged, of controlled substance violations involving methamphetamine. Sibert was aware of those charges and the attendant penalties. The jury properly found all the required elements. Accordingly, there was no error.
¶ 16 Common sense supports this conclusion. The jury considered only methamphetamine when it found that Sibert possessed and intended to deliver a controlled substance. Methamphetamine was the only controlled substance in the charging document, the only controlled substance defined in the jury instructions, CP at 44, and the only controlled substance the prosecution proved beyond a reasonable doubt through expert testimony. 3 Verbatim Report of Proceedings (Apr. 27, 2005) at 221-30. Methamphetamine was also the only controlled substance mentioned by either party during closing arguments. Id. at 261, 269, 271.
¶ 17 If the prosecution had been unable to convince the jury that Sibert was in possession and intended to deliver methamphetamine, there could have been no conviction. Thus, common sense as well as the incorporation by reference of the charging document into the "to convict" instructions supports Sibert's conviction of delivering and possessing the specific controlled substance at issue, *146 methamphetamine. Consequently, there is no error in the "to convict" jury instructions that merits overturning Sibert's convictions and sentence.

B. Proof of Identity Beyond a Reasonable Doubt

¶ 18 Sibert also argues that his sentence was excessive because the jury did not find beyond a reasonable doubt that he delivered one of the controlled substances listed in former RCW 69.50.401 (2003). Pet'r's Suppl. Br. at 13-14. Sibert relies on Blakely and State v. Recuenco, 163 Wash.2d 428, 180 P.3d 1276 (2008) in making this claim.
¶ 19 Sibert's argument fails for the reasons already discussed. The jury found that Sibert delivered one of the controlled substances listed in former RCW 69.50.401 (2003): methamphetamine. In order to convict Sibert, the jury had to find that the State met its burden of proof in regards to the elements "as charged." CP at 40-42, 49. The charging document specified methamphetamine as the only controlled substance involved in the crimes and accurately identified the maximum penalty associated with conviction of a methamphetamine violation. CP at 12-14. Furthermore, methamphetamine was the only controlled substance defined as such in the jury instructions, the only substance the State sought to prove through expert testimony, and the only controlled substance mentioned in closing arguments. There was thus no Blakely violation with respect to sentencing, after the jury found him guilty.
¶ 20 Sibert also argues that his prior convictions must be proven to a jury beyond a reasonable doubt before they could be used to enhance his sentence. He acknowledges that his attorney agreed with the prosecutor's statement of criminal history, but he contends that he did not actually waive his right to a jury trial on this issue. Pet'r's Suppl. Br. at 19 n. 29. However, this argument is immaterial: prior convictions are an exception to the Blakely rule requiring that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. State v. Alvarado, 164 Wash.2d 556, 563, 192 P.3d 345 (2008) (citing Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).
¶ 21 Accordingly, the trial court appropriately sentenced Sibert to 64 monthswithin the standard rangebased on his offender score, the seriousness level of the crimes, and the school bus route stop enhancements.

C. Definition of Knowledge

¶ 22 Sibert next alleges that the jury instruction given at his trial defining "knowledge" (jury instruction 18) was inappropriate.[4] "Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." Bodin v. City of Stanwood, 130 Wash.2d 726, 732, 927 P.2d 240 (1996). Jury instructions must convey "that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt." State v. Bennett, 161 Wash.2d 303, 307, 165 P.3d 1241 (2007). It is reversible error if the instructions relieve the State of this burden. State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995).
¶ 23 Jury instruction 18, taken verbatim from 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 10.02, at 150 (2d ed. 1994) (WPIC), and based on former RCW 9A.08.010 (1975), reads:
A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result which is described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.
If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.

*147 Acting knowingly or with knowledge also is established if a person acts intentionally.[[5]]
¶ 24 Sibert takes issue with the final sentence of instruction 18. He argues the sentence "requires the jury to conclude knowledge is established by proof of any intentional act, even if unrelated to the element for which knowledge is required." Pet'r's Suppl. Br. at 3.[6] He claims the language created "a conclusive presumption." Id.; see State v. Deal, 128 Wash.2d 693, 699, 911 P.2d 996 (1996) (mandatory presumptions "run afoul of a defendant's due process rights if they serve to relieve the State of its obligation to prove all of the elements of the crime charged"). However, the jury instructions at Sibert's trial, taken as a whole, accurately defined knowledge and did not create a mandatory presumption.
¶ 25 The language at issue ("[a]cting knowingly or with knowledge also is established if a person acts intentionally") is equivalent to RCW 9A.08.010(2) ("[w]hen acting knowingly suffices to establish an element, such element also is established if a person acts intentionally"). Additionally, jury instruction 23 defined "intentionally" as "acting with the objective or purpose to accomplish a result which constitutes a crime." CP at 52. Jury instruction 10 also informed the jury "[i]t is a crime for any person to deliver a controlled substance that the person knows to be a controlled substance." CP at 39 (emphasis added).
¶ 26 Contrary to Sibert's contentions, the only intentional act the jury could equate with knowledge was one for which the jury found Sibert acted "with the objective or purpose to accomplish a result which constitutes a crime." CP at 52. The jury instructions explained it was a crime "to deliver a controlled substance that the person knows to be a controlled substance." CP at 39 (emphasis added). The jury instructions required that the State prove Sibert knew he was delivering a controlled substance. Under a plain reading of the jury instructions, the State was not relieved of proving every element of the charged offense.[7]
¶ 27 The State was required to prove the "knowledge" element of the offense and it did so. The knowledge jury instruction was appropriate.

CONCLUSION
¶ 28 Given that the "to convict" jury instructions incorporated by reference the specific identity of the controlled substance charged ("to wit: methamphetamine"), as *148 well as the fact that the State met its burden of proof with respect to establishing that Sibert committed crimes involving that substance, no error occurred to require reversal of either Sibert's convictions or his sentence. Sibert's other claims are meritless. We therefore affirm the Court of Appeals decision upholding his convictions and sentence.
WE CONCUR: Chief Justice MADSEN, concurs in result only, and Justices OWENS, FAIRHURST and CHAMBERS.
ALEXANDER, J. (dissenting).
¶ 29 I dissent because, in my view, it was error for the trial court to (1) omit the identity of the controlled substance in the "to convict" jury instructions and (2) impose a sentence that was not authorized by the jury's verdict. As the harmless error doctrine does not apply to the second error, I would vacate Richard Sibert's sentence and remand for resentencing.

The Instructional Error
¶ 30 The lead opinion correctly sets forth the relevant controlling precedent concerning "to convict" jury instructions. See lead opinion at 144-45. In that regard, it rightly notes that "`[t]he State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld'" and that "[t]he identity of a controlled substance is an essential element where it increases the maximum sentence." Id. at 144 (quoting State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995)), 145 (citing State v. Goodman, 150 Wash.2d 774, 785-86, 83 P.3d 410 (2004)). The lead opinion also properly holds that here the identity of the controlled substance is an "essential element" because it "determined the level of the crime and its penalty." Id. at 145 (citing Goodman, 150 Wash.2d at 785-86, 83 P.3d 410; State v. Eaton, 164 Wash.2d 461, 473-76, 191 P.3d 1270 (2008) (Sanders, J., dissenting)). The lead opinion further acknowledges that "`a "to convict" [jury] instruction must contain all of the elements of the crime because it serves as a "yardstick" by which the jury measures the evidence to determine guilt or innocence.'" Id. at 144 (emphasis added) (alteration in original) (quoting State v. Smith, 131 Wash.2d 258, 263, 930 P.2d 917 (1997)) (quoting State v. Emmanuel, 42 Wash.2d 799, 819, 259 P.2d 845 (1953)).
¶ 31 However, in seeming contradiction of the above rules and its conclusion that the identity of the controlled substance is an "essential element," the lead opinion determines that it was not error for the trial court to omit the identity of the controlled substance from the "to convict" instructions given in this case.[1]Id. at 145. This conclusion is, in my view, inexplicable because the "to convict" instructions did not specify the controlled substance Sibert allegedly delivered and possessed with intent to deliver. It was error, therefore, for the trial court to give the jury "to convict" instructions that failed to inform the jury that the State must prove the identity of the controlled substance in addition to the other essential elements of the crimes charged. Cf. State v. DeRyke, 149 Wash.2d 906, 912, 73 P.3d 1000 (2003) (holding "it was error to give the jury a `to convict' instruction for the charge of attempted first degree rape which did not specify the degree of the rape allegedly committed"). The lead opinion errs in holding otherwise. Moreover, to the extent the lead opinion's analysis relies on the fact that "[m]ethamphetamine was the only controlled substance *149 ... defined in the jury instructions,"[2] lead opinion at 145 (citing Clerk's Papers (CP) at 44), it violates the rule that "a reviewing court may not rely on other instructions to supply the element missing from the `to convict' instruction." DeRyke, 149 Wash.2d at 910, 73 P.3d 1000 (citing Smith, 131 Wash.2d at 262-63, 930 P.2d 917).
¶ 32 Because I would hold that the "to convict" instructions were deficient, I must express my view on the question of whether Sibert is entitled to automatic reversal of his convictions or whether his claim is subject to harmless error analysis. As a general principle, an erroneous jury instruction is ordinarily subject to harmless error analysis. Id. at 912, 73 P.3d 1000. Automatic reversal of a conviction is, however, required "when an `omission or misstatement in a jury instruction relieves the State of its burden' of proving every essential element of the crime." Id. (quoting State v. Brown, 147 Wash.2d 330, 339, 58 P.3d 889 (2002)). Sibert, thus, would be entitled to an automatic reversal of his convictions only if the trial court failed to instruct the jurors on all the elements of delivery of a controlled substance and possession of a controlled substance with intent to deliver. See id. As the "to convict" instructions included some elements of the crimes charged, automatic reversal is not required. See Goodman, 150 Wash.2d at 782, 83 P.3d 410 (listing "statutory elements" of possession of a controlled substance with intent to deliver); State v. DeVries, 149 Wash.2d 842, 849-50, 72 P.3d 748 (2003) (setting forth "necessary elements" of delivering a controlled substance). Consequently, the trial court's error is subject to harmless error analysis.
¶ 33 Under harmless error analysis, "[a]n instructional error is presumed to [be] prejudicial unless it affirmatively appears that it was harmless." Smith, 131 Wash.2d at 263-64, 930 P.2d 917 (citing State v. Wanrow, 88 Wash.2d 221, 237, 559 P.2d 548 (1977)). "As applied to omissions or misstatements of elements in jury instructions, `the error is harmless if that element is supported by uncontroverted evidence.'" State v. Thomas, 150 Wash.2d 821, 845, 83 P.3d 970 (2004) (quoting Brown, 147 Wash.2d at 341, 58 P.3d 889 (citing Neder v. United States, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999))), abrogated in part on other grounds, Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Restated, "[i]n order to hold the error harmless, we must `conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'" Brown, 147 Wash.2d at 341, 58 P.3d 889 (quoting Neder, 527 U.S. at 19, 119 S.Ct. 1827).
¶ 34 It is my judgment that the instructional error in this case was harmless. I reach this conclusion for two of the reasons the lead opinion relies on to hold, albeit incorrectly, that the instructions were not erroneous. First, methamphetamine was the only controlled substance the prosecution proved through expert testimony. 3 Verbatim Report of Proceedings (VRP) at 221-30. Second, methamphetamine was the only controlled substance mentioned in closing arguments: it was referenced three times by the prosecutor in his closing argument. 3 VRP at 261, 269, 271. The references in the amended information to the controlled substance as "to-wit: Methamphetamine," CP at 12, 13, 14, do not support the conclusion that the instructional error was harmless because there is no evidence in the record that the jury was given the amended information as an exhibit or was told what the amended information charged.[3] Nevertheless, these reasons are sufficient to support a conclusion that the identity of the controlled substance was supported by uncontroverted evidence and it is beyond a reasonable doubt that the jury verdict would have been the same absent the instructional error. I would thus hold that the error in omitting the identity of *150 the controlled substance in the "to convict" instructions was harmless.
¶ 35 Accordingly, despite my disagreement with the lead opinion's conclusion that it was not error for the trial court to give the "to convict" instructions that it did, I agree with its conclusion that reversal of Sibert's convictions is not warranted for the instructional error. Lead opinion at 145-46.

The Sentencing Error
¶ 36 Relying on our decision in State v. Recuenco, 163 Wash.2d 428, 180 P.3d 1276 (2008), Sibert asks us to hold that the sentence imposed by the trial court in this case violates article I, section 21 of our state constitution. That provision states that "[t]he right of trial by jury shall remain inviolate." CONST. ART. I, § 21. In upholding the sentence, the lead opinion does not discuss Recuenco or the jury trial right.[4]
¶ 37 In Recuenco, a jury found that the defendant, Arturo Recuenco, was armed with a deadly weapon during the commission of the underlying offense, second degree assault. Despite the verdict, the trial court imposed a 36-month firearm enhancement, rather than a 12-month deadly weapon enhancement. We held that in doing so the trial court violated article I, section 21 because the jury's verdict did not authorize the court "to sentence [the defendant] for the additional two years that correspond with the greater enhancement." Recuenco, 163 Wash.2d at 440, 180 P.3d 1276.
¶ 38 Here, a jury found Sibert guilty of three counts of delivery of "a Controlled Substance" and one count of possession with intent to deliver "a Controlled Substance." CP at 23-26. It also found that two of the counts occurred within 1,000 feet of a school bus stop. In determining the standard sentence ranges for Sibert's offenses, the trial court calculated that Sibert had an offender score of five and that the offenses had seriousness levels of II, yielding standard sentence ranges (without enhancements) of 20-60 months. For the two counts found by the jury to have occurred within 1,000 feet of a school bus stop, the trial court determined that the mandatory 24-month school bus zone enhancement increased the standard sentence ranges to 44-84 months. The trial court then sentenced Sibert to confinement as follows: 64 months on count I (delivery), 60 months on count II (delivery), 64 months on count III (delivery), and 60 months on count IV (possession with intent to deliver). Because the sentences were ordered to be served concurrently, the actual number of months of total confinement ordered was 64 months.
¶ 39 Sibert argues, in part, that he should not have received a sentence "enhanced above 6-18 months" because the jury did not make a finding regarding the identity of the controlled substance. Pet'r's Suppl. Br. at 14. If Sibert is correct, then the alleged error cannot be harmless. That conclusion follows from Recuenco, where we held that the harmless error doctrine did not apply to the aforementioned violation of article I, section 21 in that case. Recuenco, 163 Wash.2d at 440-41, 180 P.3d 1276. Likewise, in State v. Williams-Walker, 167 Wash.2d 889, 225 P.3d 913 (2010), we recently held that where a sentencing court violates article I, section 21 by imposing a sentence enhancement that is not authorized by the jury, "error occurs that can never be harmless." Id. at 902, 225 P.3d 913 (holding harmless error doctrine did not apply to violations of jury trial right where sentencing courts imposed firearm enhancements after juries found defendants were armed with deadly weapons).
¶ 40 Recuenco and Williams-Walker are consistent with our prior determination that *151 the Washington Constitution provides greater protection for jury trials than is provided in the federal constitution. See Recuenco, 163 Wash.2d at 440, 180 P.3d 1276 (citing State v. Smith, 150 Wash.2d 135, 151, 75 P.3d 934 (2003) and quoting City of Pasco v. Mace, 98 Wash.2d 87, 99, 653 P.2d 618 (1982)); see also State v. Hicks, 163 Wash.2d 477, 492, 181 P.3d 831 (2008) (citing Mace, 98 Wash.2d at 99, 653 P.2d 618). In interpreting the "inviolate" nature of the right to a jury trial under article I, section 21, we have relied on Webster's definition: "`"free from change or blemish: PURE, UNBROKEN ... free from assault or trespass: UNTOUCHED, INTACT."'" Hicks, 163 Wash.2d at 492, 181 P.3d 831 (alteration in original) (quoting Smith, 150 Wash.2d at 150, 75 P.3d 934 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1190 (1993))). The increased protection of the jury trial right supports the view that harmless error analysis does not apply when a trial court imposes a sentence that exceeds the authority granted by the jury's verdict. Cf. id. (holding increased protection of jury trial right supported affording trial judge discretion to find discrimination in jury selection).
¶ 41 Here the sentence imposed was invalid because it was in excess of the trial court's authority. Sibert correctly claims that the identity of the controlled substance affected the applicable seriousness level and, consequently, the standard sentence ranges for his offenses. Under RCW 9.94A.518, Sibert's convictions did not have a seriousness level of II with respect to all controlled substances to which former RCW 69.50.401(a)(1) (1998) applied. Rather, they were seriousness level I offenses if the controlled substance was marijuana. RCW 9.94A.518 (seriousness level I applies to delivery of or possession with intent to deliver marijuana); RCW 69.50.204(c)(14) (marijuana listed in schedule I); former RCW 69.50.401(a)(1)(iii) (RCW 69.50.401(a)(1) applies to controlled substances classified in schedule I). Thus, given Sibert's offender score, the standard sentence ranges (without enhancements) for delivery of and possession with intent to deliver "a Controlled Substance" would be 6-18 months. See RCW 9.94A.517. The school bus zone enhancement does, however, increase the standard sentence ranges to 20-42 months for the two counts found by the jury to have occurred within 1,000 feet of a school bus stop. RCW 9.94A.533(6) (school bus zone enhancement); State v. Silva-Baltazar, 125 Wash.2d 472, 478, 886 P.2d 138 (1994) (interpreting the interplay between the school bus zone enhancement, former RCW 9.94A.310(5) (1994), which is now RCW 9.94A.533(6), and RCW 69.50.435); State v. Pierce, 78 Wash.App. 1, 4, 895 P.2d 25 (1995) (holding the enhancement provisions of former RCW 69.50.435(a) (1991) apply to marijuana offenses that violate RCW 69.50.401).
¶ 42 Because the jury found Sibert guilty of delivering and possessing with intent to deliver an unidentified "Controlled Substance," the trial court was not authorized to impose a sentence beyond the enhanced standard sentence range for any controlled substance under former RCW 69.50.401(a)(1). Stated differently, "[w]ithout a jury determination that [Sibert delivered or possessed with intent to deliver methamphetamine], the trial court lacked authority to sentence [him for more than 42 months for delivering or possessing with intent to deliver "a Controlled Substance" in a school bus zone]." Recuenco, 163 Wash.2d at 440, 180 P.3d 1276. Thus, the 64-month sentence imposed by the trial court exceeded the enhanced standard range as authorized by the jury.
¶ 43 Sibert also correctly asserts that the identity of the controlled substance affected the statutory maximum sentence for the offenses. Pet'r's Suppl. Br. at 14. Under former RCW 69.50.401(a)(1), four types of controlled substances identified in the statute, including methamphetamine, carried a maximum sentence of 10 years. Former RCW 69.50.401(a)(1)(i)-(ii). The maximum sentence for all other controlled substances was five years. Former RCW 69.50.401(a)(1)(iii)-(v). Here, the school bus zone enhancement doubled the statutory maximum sentence to 10 years for the two counts to which it applied. See Silva-Baltazar, 125 Wash.2d at 476, 886 P.2d 138. Consequently, "[w]ithout a jury determination that he [delivered or possessed with intent to deliver methamphetamine], the trial court lacked authority to sentence [Sibert for more *152 than 10 years for delivery or possession with intent to deliver "a Controlled Substance" in a school bus zone]." Recuenco, 163 Wash.2d at 440, 180 P.3d 1276. Therefore, the sentence imposed was below the authorized statutory maximum as enhanced.
¶ 44 In sum, although the 64-month sentence was properly below the enhanced statutory maximum, it was invalid because it exceeded the enhanced standard range authorized by the jury's verdict. Because this violated Sibert's article I, section 21 jury trial right and such errors cannot be harmless, I would accordingly vacate his sentence and remand for resentencing.
WE CONCUR: Justices CHARLES W. JOHNSON and DEBRA L. STEPHENS.
SANDERS, J. (dissenting).
¶ 45 The jury instructions given in this case relieved the State of its burden to prove every element beyond a reasonable doubt. If the State is relieved of that burden, the defendant's right to a jury trial is violated. Sullivan v. Louisiana, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); Neder v. United States, 527 U.S. 1, 12, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). This court has long held that such violation produces a constitutional error requiring automatic reversal. See State v. Smith, 131 Wash.2d 258, 265, 930 P.2d 917 (1997). The lead opinion here continues the court's recent and unwarranted departure from our established precedent protecting the right to a jury trial as inviolate, which our state constitution requires. Const. art. I, § 21. I dissent.

A. Omission of an essential element from the "to convict" instructions relieved the State of its burden to prove each element of the crime beyond a reasonable doubt and requires automatic reversal

¶ 46 The lead opinion correctly highlights our holding in State v. Brown: "`An instruction that relieves the State of its burden to prove every element of a crime requires automatic reversal.'" Lead opinion at 145 (quoting State v. Brown, 147 Wash.2d 330, 339, 58 P.3d 889 (2002)). Automatic reversal is also required when any essential element is omitted. "If the instructions allowed the jury to convict ... without finding an essential element of the crime charged, the State has been relieved of its burden of proving all elements of the crime(s) charged beyond a reasonable doubt, and thus the error affected his constitutional right to a fair trial." State v. Stein, 144 Wash.2d 236, 241, 27 P.3d 184 (2001) (emphasis added). This protection is imperative in "to convict" instructions, which "serve[ ] as a `yardstick' by which the jury measures the evidence to determine guilt or innocence." Smith, 131 Wash.2d at 263, 930 P.2d 917 (quoting State v. Emmanuel, 42 Wash.2d 799, 819, 259 P.2d 845 (1953)). However "not every omission or misstatement in a jury instruction relieves the State of its burden." Brown, 147 Wash.2d at 339, 58 P.3d 889. Therefore the court must "determine whether the error has not relieved the State of its burden to prove each element of the case." Id. at 344, 58 P.3d 889.
¶ 47 The omission at issue in Brown was an accomplice liability instruction. Id. at 337, 58 P.3d 889. The jury was instructed an accomplice must have knowledge his or her acts will facilitate the commission of "a crime" rather than "the crime." Id. at 338, 58 P.3d 889. Thus, the jury could have found the defendants guilty as accomplices if the defendants knew their actions would facilitate the commission of any crime, not only the crime charged. Id. Where the crimes charged were based on accomplice liability, the jury could have found the defendants guilty of any crime and the State was therefore relieved of its burden. Id. at 341-43, 58 P.3d 889.
¶ 48 Here, unlike Brown, the instructions coincided precisely with the charged crimes. The State charged Richard Sibert with three counts of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver. Clerk's Papers (CP) at 15-17. The "to convict" instructions listed the elements for those same crimes. CP at 40-42, 49. But the instructions omitted an essential element: the identity of the substance.
¶ 49 Underlying the requirement that every essential element must be included in the instructions is the constitutional right to a *153 jury trial. Our state constitution proclaims "[t]he right of trial by jury shall remain inviolate." Const. art. I, § 21.[1] Contained within the right to a jury trial is the right of the defendant to a jury verdict "beyond a reasonable doubt." Sullivan, 508 U.S. at 278, 113 S.Ct. 2078. This court has long held omission of an essential element from the jury instructions is error because "`[i]t is equivalent to directing the jury that it is not necessary for the state to prove any elements of the offense except those included in the definition given by the court.'" Emmanuel, 42 Wash.2d at 821, 259 P.2d 845 (quoting Croft v. State, 117 Fla. 832, 158 So. 454, 455 (1935)). We have affirmed this underlying principle in numerous decisions over the years. See, e.g., State v. Johnson, 100 Wash.2d 607, 623, 674 P.2d 145 (1983) ("[J]ury instructions must define every element of the offense charged.") (citing Emmanuel, 42 Wash.2d at 821, 259 P.2d 845), overruled on other grounds by State v. Bergeron, 105 Wash.2d 1, 4, 711 P.2d 1000 (1985); State v. Allen, 101 Wash.2d 355, 358, 678 P.2d 798 (1984) ("It is clear that the trial court must instruct the jury on every element of the crime.") (citing Emmanuel, 42 Wash.2d at 819, 259 P.2d 845). The appropriate remedy for an error that relieves the State of its burden to prove each element of a crime beyond a reasonable doubt is automatic reversal. Smith, 131 Wash.2d at 265, 930 P.2d 917.
¶ 50 Manifest constitutional error results when a trial court's "to convict" instruction relieves the State of its burden to prove each and every element of a crime. See Stein, 144 Wash.2d at 240-41, 27 P.3d 184 ("Failure to instruct on an element of the offense is thus error of constitutional magnitude."). Of course a "violation of a defendant's constitutional rights is presumed to be prejudicial." State v. Stephens, 93 Wash.2d 186, 190-91, 607 P.2d 304 (1980).
¶ 51 Washington courts have inconsistently and confusingly applied our rule requiring automatic reversal for failure to prove each and every element in "to convict" instructions. Most consistently, though, we have required automatic reversal when the trial court omits even a single essential element of the crime. See, e.g., Smith, 131 Wash.2d at 263, 265, 930 P.2d 917 ("It cannot be said that a defendant has had a fair trial if the jury must guess at the meaning of an essential element of a crime or if the jury might assume that an essential element need not be proved," and "failure to instruct on an element of an offense is automatic reversible error."); State v. Byrd, 125 Wash.2d 707, 713-14, 887 P.2d 396 (1995) ("The State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld. It is reversible error to instruct the jury in a manner that would relieve the State of this burden." (citations omitted)); State v. Summers, 107 Wash.App. 373, 381, 28 P.3d 780 (2001) ("Under the current case law in Washington, when a trial court fails to include an essential element in a `to convict' instruction, it is a manifest constitutional error that requires automatic reversal."), modified on recons. on other grounds, 43 P.3d 526 (2002).
¶ 52 We confused this straightforward and commonsense approach to jury instructions in State v. Brown, 147 Wash.2d 330, 58 P.3d 889 (2002). In Brown we stated an "instruction that relieves the State of its burden to prove every element of a crime requires automatic reversal." Id. at 339, 58 P.3d 889. This is literally true; however, this should not be read to mean failure to instruct on a single essential element is not also cause for automatic reversal. The term "every" in Brown was clearly intended to mean "an" element. In fact the Brown majority cited Smith and Byrd for that very proposition. Unfortunately later opinions ignored this solid foundation and, instead, misconstrued the term "every" to require automatic reversal only when the State fails to prove all essential *154 elements in "to convict" instructions.[2]See, e.g., State v. DeRyke, 149 Wash.2d 906, 912, 73 P.3d 1000 (2003).
¶ 53 Our constitution and precedent favor the pre-Brown paradigm. Automatic reversal is required when the State fails to prove beyond a reasonable doubt any element of the crime charged. This approach follows logically. If a jury must find all essential elements of a crime in order to convict, omitting even a single essential element opens the door to constitutional error. How can it be harmless for the State to omit an element that must be proved to find guilt?
¶ 54 Omitting even a single essential element from "to convict" instructions is immune from harmless error analysis. The United States Supreme Court has determined a jury instruction that relieves the State of its burden to prove an element of the crime is subject to harmless error and does not require automatic reversal. Neder, 527 U.S. at 9, 119 S.Ct. 1827. We incorrectly embraced Neder's harmless error approach in Brown, 147 Wash.2d at 340, 58 P.3d 889. It does not apply. Our state constitution provides greater protection than its federal analog. State v. Smith, 150 Wash.2d 135, 156, 75 P.3d 934 (2003); State v. Hicks, 163 Wash.2d 477, 492, 181 P.3d 831, cert. denied, ___ U.S. ___, 129 S.Ct. 278, 172 L.Ed.2d 205 (2008). The mandate requiring automatic reversal in Smith and its progeny controls. See, e.g., State v. Pope, 100 Wash. App. 624, 630, 999 P.2d 51 (2000) ("A harmless error analysis is never applicable to the omission of an essential element of the crime in the `to convict' instruction. Reversal is required."). Brown's embrace of federal harmless error analysis for violations of federal law has no place in our well-established requirement of automatic reversal.[3] Omission of the identity of the controlled substance in Sibert's "to convict" instructions requires automatic reversal.
¶ 55 Automatic reversal is consistent with our state constitution's command that the right to a jury trial remain inviolate. See Const. art. I, § 21. As the dissent by Alexander, J., at 150-51, points out, we have previously relied on Webster's Dictionary when interpreting "inviolate": "`free from change or blemish: PURE, UNBROKEN... free from assault or trespass: UNTOUCHES, INTACE.'" Smith, 150 Wash.2d at 150, 75 P.3d 934 (alteration in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1190 (1993)). Anything less cannot be said to leave our jury trial right "free from blemish," "unbroken," and "intact."
¶ 56 Additionally, the lead opinion wrongly asserts "to convict" instructions can properly "incorporat[e] by reference" an essential element of the crime.[4] Lead opinion at 145-46. Given the importance of "to convict" instructions, it should be clear our constitution does not permit the "implied[]" incorporation by reference of an essential element, as the lead opinion asserts. Lead opinion at 145. This notion of implied incorporation by reference assumes too much, particularly with the stakes so high. The court's holding today flies in the face of our established precedent, justice, and common sense. The lead opinion gives the State a free pass to omit essential elements from instructions and, in the process, *155 dilutes the State's burden to prove all elements of the crime beyond a reasonable doubt. For these reasons I would reverse, as our jurisprudence demands.

B. The knowledge instruction relieved the State of its burden to prove every element of the crime beyond a reasonable doubt and requires reversal

¶ 57 The lead opinion also errs in its analysis of the knowledge instruction. In State v. Goble the Court of Appeals held instructions relieve the State of its burden of proof where separate intent and knowledge elements required under the "to convict" instructions were conflated into a single element. 131 Wash.App. 194, 203, 126 P.3d 821 (2005). The crux of the knowledge instruction issue is thus whether the jury could have conflated two mens rea elements. If the answer is yes, then the instructions relieved the State of its burden of proof and automatic reversal is required.
¶ 58 The "to convict" instructions for delivery of a controlled substance required the jury to find three elements:
To convict the Defendant, Richard Edward Sibert, ... each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on [a certain date] the Defendant delivered a controlled substance;
(2) That the Defendant knew that the substance delivered was a controlled substance; and
(3) That the acts occurred in the State of Washington.
CP at 40-42. The knowledge instruction read: "Acting knowingly or with knowledge also is established if a person acts intentionally." CP at 47. The same knowledge instruction was held to relieve the State of its burden of proof in Goble. Goble, 131 Wash. App. at 203, 126 P.3d 821. In Goble the "to convict" instructions required the jury to find beyond a reasonable doubt:
"(1) That ... the defendant assaulted [the] Deputy ...;
"(2) That at the time of the assault [the] Deputy ... was a law enforcement officer who was performing his official duties; and
"(3) That the defendant knew at the time of the assault that [the] Deputy ... was a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties; and
"(4) That the acts occurred in Lewis County, Washington."
Id. at 200, 126 P.3d 821 (emphasis omitted).
¶ 59 The only discernible difference between the instructions in this case and the instructions in Goble is the element that the law enforcement officer was acting in his official capacity at the time of the assault. Otherwise, they are practically indistinguishable for the purposes of a faulty knowledge instruction. Both require an act: assault in Goble, delivery here. Both require knowledge of a tangential fact not directly related to the action itself: knowledge of the identity of the officer in Goble, knowledge of the identity of a substance here. Just as in Goble, the knowledge instruction in this case allowed a jury to conflate the intentionality of an act (delivery) with knowledge of a tangential fact (that the substance delivered was a controlled substance). See id. at 202, 126 P.3d 821.
¶ 60 The lead opinion claims this case is more like State v. Gerdts, 136 Wash.App. 720, 150 P.3d 627 (2007), than Goble. Lead opinion at 147 n. 7. In Gerdts the same argument concerning the same knowledge instruction was raised in a malicious mischief conviction. Gerdts, 136 Wash.App. at 725-26, 150 P.3d 627. The "to convict" instructions in Gerdts, however, required the jury to find (1) that the defendant caused physical damage to the property of another in an amount exceeding $250 and (2) that the defendant acted knowingly and maliciously.[5]Id. at 725, 150 P.3d 627. Thus in Gerdts the knowledge element was not separate from the act itself. The jury could not have conflated anything because there was no knowledge about a fact *156 separate from an intentional act to conflate. If the jury had been instructed to convict only if it found a third element of knowledge about a fact (if, for example, the jury was required to find the defendant knew the property belonged to another) then Goble would have applied. But there was no such element in Gerdts. Id. There is such an element here: the jury was required to find Sibert knew the substance delivered was a controlled substance. CP at 40-42. This case is governed by Goble, not Gerdts.
¶ 61 The lead opinion distinguishes Goble because there were two mens rea elements in the Goble instructions, but only one mens rea element in delivery of a controlled substance. The lead opinion is technically correct. The delivery element does not in itself require the State to show any intent. See State v. Boyer, 91 Wash.2d 342, 343, 588 P.2d 1151 (1979). But juries are not well versed in the subtleties of criminal mental states. An instruction that tells a jury "[a]cting knowingly or with knowledge also is established if a person acts intentionally" is inherently confusing. See Goble, 131 Wash.App. at 203, 126 P.3d 821. In a case like Gerdts such instruction is without consequence because there was only a single act; even if the jury had found the act of damaging property was intentional, there was no separate knowledge element concerning a separate fact about which the jury could presume anything. See Gerdts, 136 Wash.App. at 728, 150 P.3d 627. But here, where there is an act  delivery  and also a fact of which the defendant must be found to have had knowledge, then the intentional nature of the act, whether proved by the State or not, allows the jury to presume knowledge of the fact based only on the intentional act. See Goble, 131 Wash.App. at 203, 126 P.3d 821. The State was thus relieved of its burden to prove each and every element beyond a reasonable doubt, and automatic reversal is required. See Brown, 147 Wash.2d at 339, 58 P.3d 889; Smith, 131 Wash.2d at 265, 930 P.2d 917; Stein, 144 Wash.2d at 240-41, 27 P.3d 184.

C. The "to convict" instructions violated Blakely

¶ 62 Finally the lead opinion's dismissal of the Blakely violation is improper for the same reasons iterated above: error that relieves the State of its burden to prove every element beyond a reasonable doubt cannot be harmless.
¶ 63 In Blakely v. Washington the United States Supreme Court held any fact that can increase the sentence imposed must be proved by the State beyond a reasonable doubt. 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The lead opinion concedes that the identity of the controlled substance in this case, methamphetamine, is a fact that increases the maximum sentence. Lead opinion at 145. Relying on its incorporation-by-reference theory, the majority dismisses the Blakely violation. Lead opinion at 145-46. But the jury in this case never rendered a verdict on methamphetamine; that fact was not found by the jury. CP at 23-26, 40-42, 49. The State was, again, relieved of its burden of proof, and reversal is therefore required.
¶ 64 For the above reasons, I dissent.
NOTES
[1] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[2] These charges were for crimes in violation of former RCW 69.50.401(2)(b) (2003).
[3] The "to convict" jury instructions required that Sibert (1) possessed a controlled substance, (2) intended to deliver the controlled substance, and (3) the acts occurred in the State of Washington. CP at 12-14.
[4] He did not object at trial to this instruction.
[5] According to the WPIC, the sentence at issue in the jury instruction is optional and can be included when appropriate. State v. Goble, 131 Wash. App. 194, 202 n. 3, 126 P.3d 821 (2005).
[6] Sibert did not object to jury instruction 18 at trial and Division Two of the Court of Appeals declined to consider this issue. RAP 2.5(a) permits a party to raise a "manifest error affecting a constitutional right" for the first time on appeal, State v. Riley, 121 Wash.2d 22, 31, 846 P.2d 1365 (1993), but Sibert fails to make this showing.
[7] Nevertheless, Sibert points to. Goble to support his argument that jury instruction 18 was confusing and inappropriate. In Goble, the trial court utilized the same "knowledge" jury instruction. The Court of Appeals found the instruction "confusing" because it allowed "the jury to convict without finding all the necessary elements required." Goble, 131 Wash.App. at 196, 126 P.3d 821. The court accordingly reversed the conviction and remanded for further proceedings. Id. However, the Court of Appeals later clarified Goble in State v. Gerdts, 136 Wash. App. 720, 150 P.3d 627 (2007). There, the court found the same jury instruction appropriate in the case before it and limited the holding in Goble to its particular facts. In Gerdts, the defendant was convicted of second degree malicious mischief after scraping the side of a van. Gerdts, 136 Wash.App. at 722-23, 150 P.3d 627. The court found the knowledge jury instructions adequate as "there was no second mens rea element to conflate." Id. at 728, 150 P.3d 627. The jury was able to find that the defendant knowingly scraped the side of the van if it also found that he did so intentionally. In the present case, the State was only required to prove Sibert's mental state with respect to one element whether he knew that the substance he delivered was a controlled substance. Although Sibert conceivably could have delivered a controlled substance without knowing what it was, the jury instructions correctly limited the jury to finding knowledge based on an intentional act that constituted a crime. The jury instructions further explained, "[i]t is a crime for any person to deliver a controlled substance that the person knows to be a controlled substance." CP at 39 (Jury Instruction 10) (emphasis added). Therefore, the analysis in Gerdts is appropriate.
[1] The "to convict" jury instructions for the three counts of delivery of a controlled substance required that to convict Sibert of the crimes as charged, "each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That ... the Defendant delivered a controlled substance;
"(2) That the Defendant knew that the substance delivered was a controlled substance; and
"(3) That the acts occurred in the State of Washington." Clerk's Papers (CP) at 40, 41, 42.
The "to convict" instructions for the count of possession of a controlled substance with intent to deliver required that to convict Sibert of the crime as charged, "each of the following elements of the crime must be proved beyond a reasonable doubt:
"(1) That ... the Defendant possessed a controlled substance;
"(2) That the Defendant possessed the substance with the intent to deliver the controlled substance; and
"(3) That the acts occurred in the State of Washington." CP at 49.
[2] Instruction 15 provided: "Methamphetamine is a controlled substance." CP at 44.
[3] At oral argument, the State conceded that the jury was not given a copy of the amended information as an exhibit and the trial court did not tell the jury what the amended information charged. Wash. Supreme Court oral argument, State v. Sibert, No. 79509-6 (Feb. 10, 2009) at 23 min., 10-30 sec., audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org.
[4] With regard to Sibert's contention that the sentence imposed by the trial court was excessive because the "to convict" instructions omitted the identity of the controlled substance, the lead opinion merely holds that there was "no Blakely [v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)] violation with respect to sentencing." Lead opinion at 146. I express no view as to this conclusion of the lead opinion because I would have us decide the propriety of the sentence imposed here under the independent and adequate state grounds of article I, section 21. See, e.g., State v. Patton, 167 Wash.2d 379, 396 n. 9, 219 P.3d 651 (2009); Dreiling v. Jain, 151 Wash.2d 900, 915 n. 6, 93 P.3d 861 (2004); City of Seattle v. McCready, 123 Wash.2d 260, 281-82, 868 P.2d 134 (1994). We need not decide whether the sentence imposed violated Blakely.
[1] This court has found our state constitution provides greater protection for jury trials than its federal counterpart. State v. Smith, 150 Wash.2d 135, 156, 75 P.3d 934 (2003); see also State v. Hicks, 163 Wash.2d 477, 492, 181 P.3d 831, cert. denied, ___ U.S. ___, 129 S.Ct. 278, 172 L.Ed.2d 205 (2008). Moreover, our precedent requiring automatic reversal where the State is relieved of its burden of proof is consistent with our greater constitutional protection. See Brown, 147 Wash.2d at 339, 58 P.3d 889.
[2] The lead opinion and the dissent by Alexander, J., incorrectly adhere to this latter view. The lead opinion claims "only the total omission of essential elements" can relieve the State's burden of proof. Lead opinion at 145. Justice Alexander's dissent states, "Sibert, thus, would be entitled to an automatic reversal of his conviction only if the trial court failed to instruct the jurors on all the elements. ..." Dissent at 149 (Alexander, J.). As explained above, this approach does not make sense because omission of a single essential element has the same effect as omitting all essential elements.
[3] Even if harmless error applied here, it would not save the State's argument because it allows courts to subject constitutional guaranties to a guessing gameone that impermissibly relieves the State of its burden to prove each element of the crime beyond a reasonable doubt. Harmless error does not apply to omissions of essential elements in "to convict" instructions because a court cannot properly conclude beyond a reasonable doubt that manifest constitutional errors in no way affected the outcome of the case. See, e.g., Stephens, 93 Wash.2d at 191, 607 P.2d 304; State v. Aumick, 126 Wash.2d 422, 430-31, 894 P.2d 1325 (1995). Infirm "to convict" instructions result in an inherently unreliable prosecution.
[4] Tellingly the lead opinion cites no authority supporting this invented theory.
[5] These elements, like those cited above, appear to be taken word for word from the Washington Pattern Jury Instructions. See 11A WASHINGTON PRACTICE: WASHINGTON PRACTICE JURY INSTRUCTIONS: CRIMINAL 85.06, at 222 (3d ed. 2008).