2015 JUL 27 PM 1: 13



## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                      )
             Respondent, )
                      )
           v. )
                      )
NANCY WALTON DRAHOLD, )
                      )
             Appellant. )
                      )

No. 71248-9-I
(Consolidated with No. 72040-6-I)

DIVISION ONE

UNPUBLISHED

FILED: July 27, 2015

Cox, J. – Nancy Walton Drahold appeals her conviction for second degree assault. The trial court did not abuse its discretion when it denied Drahold's motion for a mistrial. There is sufficient evidence to support the jury's determination that Drahold's use of force was unlawful. The jury instructions were sufficient, and the trial court did not abuse its discretion when it declined to give Drahold's proposed instruction. We affirm.

In June 2012, Drahold was riding as a passenger in a white Mercedes that Tony Combs was driving. The car stopped in the right turn lane, waiting to turn at the intersection. Randy Jensen, an off-duty police officer, was driving a minivan with his wife riding in the passenger seat and his daughter in a car seat in the back. Jensen stopped two cars behind the Mercedes, which was the first car at the intersection.

Jensen testified at trial that traffic cleared the intersection several times, which would have allowed the Mercedes to turn right, but the Mercedes did not

move. Other drivers honked their horns. Jensen saw the driver of the Mercedes put a hand through the sunroof with its middle finger extended. At some point, Jensen yelled "Go!" out of his open window. After he yelled this, Combs and Drahold got out of the Mercedes and walked toward him. Jensen also exited his car.

There are conflicting accounts about what happened next. Suffice it to say, Combs, Drahold, and Jensen got into a physical altercation, which we explain in detail later in this opinion. Eventually, Combs and Drahold left.

Medics arrived and transported Jensen to the hospital as a precautionary measure. His injuries consisted of bruises on his face and thigh, scratches on his face and arm, and pain in his ribs. Later that night, Jensen noticed that his shoulder was sore. Several weeks later, an MRI revealed that Jensen had a torn labrum in his shoulder. He had surgery for this injury in August 2012.

Based on this incident, the State charged both Drahold and Combs with one count of assault in the second degree and one count of assault in the third degree. Combs' case proceeded to a bench trial.

Drahold's case proceeded to a jury trial. During the trial, one of the jurors alerted the court that she recognized Jensen's wife. The juror had purchased a dog kennel from her. The court and the parties questioned the juror out of the presence of the other jurors. She indicated that the other jurors may have overheard information about this encounter when she was talking to herself in the jury room. The court dismissed her. Drahold moved for a mistrial, which the court denied.

Drahold claimed self-defense. She proposed a to-convict instruction that contained the absence of self-defense as an element. The court declined to give Drahold's proposed instruction. The court did give the WPIC and a related instruction for the assault charge.

The jury found Drahold guilty of assault in the second degree for count one and guilty of a lesser degree offense for count two. The second count was later vacated.

Drahold appeals her conviction for second degree assault.

## MISTRIAL RULING

Drahold first argues that the court abused its discretion when it denied her motion for a mistrial following juror misconduct. We disagree.

A jury commits misconduct by considering extrinsic evidence.[1] "'[E]xtrinsic evidence is defined as information that is outside all the evidence admitted at trial . . . .'"[2] Such "'evidence is improper because it is not subject to objection, cross-examination, explanation or rebuttal.'"[3]

Washington courts "apply the long-standing rule that 'consideration of any material by a jury not properly admitted as evidence vitiates a verdict when there is a reasonable ground to believe that the defendant may have been

---

[1] State v. Pete, 152 Wn.2d 546, 552, 98 P.3d 803 (2004).

[2] Id. (emphasis omitted) (internal quotation marks omitted) (quoting State v. Balisok, 123 Wn.2d 114, 118, 866 P.2d 631 (1994)).

[3] Id. at 553 (quoting Balisok, 123 Wn.2d at 118).

3

prejudiced.'"[4] "This is an objective inquiry into whether the extraneous evidence could have affected the jury's determination, not a subjective inquiry into the actual effect of the evidence, and includes consideration of the purpose for which the extraneous evidence was interjected into deliberations."[5] "A new trial must be granted unless 'it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict.'"[6]

A trial court's discretionary ruling regarding a new trial will not be reversed absent an abuse of discretion.[7] A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.[8]

Here, the trial court did not abuse its discretion because there were no reasonable grounds to believe that Drahold may have been prejudiced.

During Jensen's wife's testimony, one of the jurors alerted the court that she recognized her. The juror had purchased a dog kennel from her. The juror remembered Jensen's wife saying that her husband, Jensen, could not help load the kennel into the car because he had had surgery. When questioned by the

---

[4] Id. at 555 n.4 (emphasis omitted) (quoting State v. Rinkes, 70 Wn.2d 854, 862, 425 P.2d 658 (1967)).

[5] State v. Johnson, 137 Wn. App. 862, 870, 155 P.3d 183 (2007).

[6] Id. (quoting State v. Briggs, 55 Wn. App. 44, 56, 776 P.2d 1347 (1989).

[7] Id. at 870-71.

[8] Id. at 871.

court, the juror indicated that the other jurors may have overheard these facts because she was "muttering about it" to herself.

The trial court dismissed the juror but it denied Drahold's motion for a mistrial on the basis that there was no reasonable grounds to believe there was any prejudice.

The court assumed for purposes of its ruling that the other jurors heard the juror's comments. But it concluded that there would be no prejudicial impact because the comments did not go to any material issue. The court noted that the degree of Jensen's shoulder injury after the surgery was not at issue, and the fact that Jensen could not pick up the kennel after surgery had no relevance to the degree of injury in the first place. The court further noted that the fact that Jensen had surgery was also not at issue.

This was a proper exercise of discretion. As the court correctly noted, these facts were not contested at trial. Rather, Drahold's argument was that her use of force was lawful self-defense.

Further, the information described by the juror was cumulative with other properly admitted evidence. Jensen testified that he had surgery to repair his injured shoulder in August 2012. He also testified that after the surgery he was off duty for a few weeks and then he returned to a light, modified duty for a few weeks. About six to eight weeks after the surgery, he returned to full duty but testified that his shoulder would never be 100 percent. Additionally, Jensen's surgeon testified that he operated on Jensen's shoulder in August 2012 and that he requires his patients to wear a shoulder immobilizer for eight weeks after

5

surgery. Thus, the fact that Jensen had surgery, and that he had limited use of his shoulder after the surgery, were facts already before the jury.

Finally, the court instructed the jury to render a verdict based only on the testimony from the witnesses, stipulations, and exhibits admitted at trial. We presume that the jury follows the court's instructions.[9]

In sum, the trial court did not abuse its discretion when it denied Drahold's motion for a mistrial.

Drahold argues that extrinsic evidence "bolstered the State's allegations regarding the degree of harm [Jensen] suffered due to his shoulder injury" and was prejudicial because it "substantiated the State's allegations that [Jensen's] shoulder injury caused a substantial loss or impairment of the function of his arm and shoulder."[10] But as just discussed, these facts were not in dispute. Thus, this argument is not persuasive.

## SUFFICIENCY OF THE EVIDENCE

Drahold next argues that the evidence was insufficient to prove that her use of force was unlawful. We disagree.

Due process requires the State to prove beyond a reasonable doubt all the necessary facts of the crime charged.[11] "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a

---

[9] State v. Johnson, 124 Wn.2d 57, 77, 873 P.2d 514 (1994).

[10] Appellant's Opening Brief at 13, 14.

[11] State v. Colquitt, 133 Wn. App. 789, 796, 137 P.3d 892 (2006).

reasonable doubt."[12] "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[13] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[14]

The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful.[15] The jury was instructed that a defendant may lawfully use force "when she reasonably believes that she or another person is about to be injured or in preventing or attempting to prevent an offense against herself or another person, and when the force is not more than is necessary."[16]

Here, the jury was instructed that it could find Drahold guilty of assault as either a principal or an accomplice. Thus, the jury could have convicted Drahold either as a principal or as Combs's accomplice. Viewing the evidence in the light most favorable to the State, the evidence is sufficient to allow the jury to conclude that Drahold's use of force was unlawful.

First, the evidence was sufficient for the jury to find that Drahold and Combs did not reasonably believe that either of them was about to be injured when they used force against Jensen, thus making their use of force unlawful.

---

[12] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[13] Id.

[14] Id.

[15] State v. Acosta, 101 Wn.2d 612, 615-17, 683 P.2d 1069 (1984).

[16] Clerk's Papers at 83.

Jensen testified that when the confrontation began, he pulled out his badge and identified himself as a police officer. He said he tried to encourage Combs and Drahold to leave. He said Drahold then approached him, bumped him, and started screaming in his face. Jensen testified that he pushed her back to move her from his personal space, but he said that he did not attempt to hit or grab her. At that point, Combs attempted to punch him and Drahold began scratching his face. Jensen said the next thing he knew, he was on the ground and Combs was choking him and punching him.

Additionally, several witnesses testified that they never saw Jensen attempt to strike or grab either Drahold or Combs. At least three witnesses testified that Combs threw the first punch.

Second, the evidence was also sufficient for the jury to find that both Drahold and Combs used more force than was necessary, which also makes their use of force unlawful.

Several witnesses testified that once Jensen was on the ground, Drahold kicked him several times. One witness testified that Combs was restraining Jensen and Drahold "took that opportunity to kick [Jensen] a bunch of times as he . . . continued to be defenseless."[17] Another witness testified that Drahold kicked Jensen several times while he was on the ground trying to protect himself and cover his head. Witnesses testified that Combs also kicked and punched Jensen several times while he was on the ground.

---

[17] Report of Proceedings (Vol. VII) at 189.

8

In sum, the evidence was sufficient for the jury to conclude that Drahold's use of force was unlawful because neither she nor Combs reasonably believed that either was about to be injured or because she and Combs used more force than necessary.

Drahold argues that the evidence showed that both she and Combs used a reasonable degree of force in response to their reasonable belief that she was about to be injured. She argues that Jensen was angry and aggressive, that Jensen was the first to use intentional force, and that Jensen was holding onto her wrist and did not let go until Combs punched him several times. But the evidence previously discussed supports the jury's determination. And we defer to the finder of fact on issues regarding conflicting testimony, credibility of witnesses, and the persuasiveness of evidence.[18] Thus, we do not address these arguments any further.

## JURY INSTRUCTIONS

Finally, Drahold argues that the trial court erred when it declined to provide her proposed to-convict jury instruction. We disagree.

"Jury instructions are sufficient if they permit each party to argue their theory of the case, do not mislead the jury, and when read as a whole, properly inform the jury of the applicable law."[19] We review de novo alleged errors of law

---

[18] State v. Ainslie, 103 Wn. App. 1, 6, 11 P.3d 318 (2000).

[19] Anfinson v. FedEx Ground Package Sys., Inc., 159 Wn. App. 35, 41-42, 244 P.3d 32 (2010).

9

in jury instructions.[20] "[A] trial court's decision whether to give a particular instruction to the jury is a matter that we review only for abuse of discretion."[21]

Here, the trial court's instructions properly informed the jury of the applicable law and permitted the parties to argue their theories of the case. The trial court gave the standard WPIC to-convict instruction for the charge of assault in the second degree. The court also gave a separate instruction on self-defense, which instructed the jury that the State had the burden to prove beyond a reasonable doubt that the force used by the defendant was not lawful.

Drahold argues that the court erred by not providing her proposed to-convict instruction, which included the following element: "That the force used by the defendant was not lawful."[22] She asserts that the absence of self-defense should have been included in the to-convict instruction because the absence of self-defense is an essential element that the State had the burden to prove beyond a reasonable doubt. She contends that omitting this element from the to-convict instruction was reversible error.

State v. Hoffman forecloses this argument.[23] In that case, the supreme court rejected the same argument, holding that to-convict instructions need not contain the absence of self-defense so long as a separate instruction informs the

---

[20] State v. Sibert, 168 Wn.2d 306, 311, 230 P.3d 142 (2010).

[21] Anfinson, 159 Wn. App. at 44.

[22] Clerk's Papers at 47.

[23] 116 Wn.2d 51, 804 P.2d 577 (1991).

jury of the State's burden of proof.[24] In short, <u>Hoffman</u> expressly approved the manner in which the jury was instructed in this case.

Drahold urges this court not to follow <u>Hoffman</u>. She asserts that <u>Hoffman</u> is inconsistent with the principles set forth in subsequent cases that address the adequacy of a to-convict instruction.[25] But none of the cases that Drahold cites question <u>Hoffman</u>'s holding. Accordingly, her arguments are best directed to the supreme court because the holding in <u>Hoffman</u> remains binding on this court.[26]

Drahold also argues that the court erred in refusing to provide her proposed instruction because the instruction was an accurate statement of the law, supported her theory of the case, and was supported by evidence. But a trial court is not required to give a requested instruction when another instruction adequately covers the same subject.[27] The instructions in this case were sufficient and the court did not abuse its discretion.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Trickey, J._

---

[24] <u>Id.</u> at 109.

[25] Appellant's Opening Brief at 22 n.5 (citing <u>State v. Sibert</u>, 168 Wn.2d 306, 230 P.3d 142 (2010); <u>State v. Mills</u>, 154 Wn.2d 1, 109 P.3d 415 (2005); <u>State v. Smith</u>, 131 Wn.2d 258, 930 P.2d 917 (1997)).

[26] <u>See State v. Gore</u>, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

[27] <u>State v. Passafero</u>, 79 Wn.2d 495, 499, 487 P.2d 774 (1971).