# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48850-7-II |
| Respondent, | |
| v. | |
| LEONEL GONZALEZ, | PUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J.  —  Leonel Gonzalez appeals his jury trial convictions and sentence for unlawful possession of a controlled substance (methamphetamine) and tampering with a witness. He argues that (1) the "to-convict" instruction for the unlawful possession of a controlled substance charge omitted an essential element because it failed to identify the controlled substance he possessed, (2) this error is not harmless as to the conviction or sentence, and (3) the witness tampering conviction must be reversed because there was insufficient evidence to prove that he attempted to induce a witness to testify falsely.

We agree that the identity of the controlled substance is an essential element of the offense of unlawful possession of a controlled substance and that it was error not to identify the substance in the to-convict instruction.  But we hold that the error was harmless as to the conviction. However, we hold that the unauthorized sentence resulting from the unlawful possession of a controlled substance conviction is not subject to a harmless error analysis.  We further hold that

the evidence was sufficient to support the witness tampering conviction. Accordingly, we affirm the convictions, but we remand for resentencing on the unlawful possession of a controlled substance conviction.

FACTS

I. BACKGROUND

A. THEFT OF THE JEEP AND ARREST

Gonzalez was in a relationship with Nona Hook for several years. Hook lived with her mother, Carol Salyers, and several other family members, and Gonzalez was frequently in the home. Salyers owned a Jeep and permitted Hook, but not Gonzalez, to drive it.

On the evening of September 17, 2015, Hook and Gonzalez argued while in the Jeep. According to Hook, after the argument, she dropped Gonzalez off at a gas station, returned home, parked the Jeep, left the Jeep keys near the back door where her mother usually put them, and went to bed.

Early the next morning, Hook awoke to find Gonzalez in her room asking her if she wanted some coffee. Hook told him to leave her alone. When he left, she went back to sleep. Later that morning, Salyers discovered that her keys and her Jeep were missing. Salyers contacted the police and reported that her Jeep had been stolen.

In the early morning hours of September 21, Gonzalez called Hook, and she asked him if he had taken the Jeep. According to Hook, Gonzalez denied knowing anything about the Jeep, but he told her that he was "coming home." 2 Report of Proceedings (RP) at 195. At some point after this call, someone contacted the police.

The police were waiting when Gonzalez arrived at Hook's home in the Jeep. Upon seeing the police, Gonzalez drove away, jumped out of the Jeep while it was still moving, and attempted to flee on foot. The Jeep rolled into and damaged a parked vehicle. The police caught and arrested Gonzalez. Following his arrest, officers discovered a white substance that later tested positive for both methamphetamine and cocaine in Gonzalez's back pocket.

## B. JAIL CALL

While in jail following his arrest, Gonzalez called Hook. This call was recorded.

During the call, Gonzalez insisted that Hook listen to him and told her that some people were trying to contact her and that when his "investigator" or "somebody" called her, she was to tell them that she "gave [him] permission." Ex. 1A at approx. 7 min. Hook responded, "Tell them that I gave you permission," and Gonzalez interrupted her and told her to "listen" and said adamantly, "That's it." Ex. 1A at approx. 7 min. 8 sec. Hook responded by chuckling and saying, "That's gonna be a little bit hard for me to do." Ex. 1A at approx. 7 min. 14 sec. Gonzalez appears to respond, "Well, then don't do it." Ex. 1A at approx. 7 min. 18 sec. The rest of Gonzalez's response is unclear.

Hook replied, "I mean, for one thing, I was—you already know what the deal was." Ex. 1A at approx. 7 min. 24 sec. And Gonzalez told her aggressively to "listen" and that they were not "going to talk about all that." Ex. 1A at approx. 7 min. 33 sec. He then stated, "You know what to do, so." Ex. 1A at approx. 7 min. 37 sec.

Gonzalez and Hook then talked about when Hook could visit so they could talk about their relationship and whether they would marry even if he was in prison. During this part of the conversation, Hook commented about how hard it was for her to be away from him, and Gonzalez

3

No. 48850-7-II

responded by asking her whether she "would rather deal with" 6 or 15 years.  Ex. 1A at approx. 10 min. 33 sec.-10 min. 45 sec.

## II. PROCEDURE

The State charged Gonzalez by amended information with theft of a motor vehicle, unlawful possession of a controlled substance (methamphetamine) under RCW 69.50.4013,[1] hit and run, and tampering with a witness.  Although a forensic examination of the white substance revealed both methamphetamine and cocaine, the amended information stated that Gonzalez had unlawfully possessed "a controlled substance, to-wit:  Methamphetamine, classified under Schedule II of the Uniform Controlled Substances Act" and did not mention cocaine.  Clerk's Papers (CP) at 5-6.

## III. TRIAL

The case proceeded to a jury trial.  During its opening statement, the State briefly mentioned that the arresting officers had found methamphetamine when they searched Gonzalez following his arrest.  Neither the State nor defense counsel mentioned cocaine or any drug other than methamphetamine in their opening statements.

The State presented testimony from Salyers, Hook, the arresting officers, the woman who owned the car that the Jeep hit, and the forensic scientist who tested the white substance found in Gonzalez's pocket.  Their testimony is consistent with the facts set out above.  Gonzalez did not present any witnesses.

---

[1] The legislature amended RCW 69.50.4013 in 2017.  LAWS OF 2017, ch. 317, § 15.  We cite to the version of the statute in effect when Gonzalez committed the offense, former RCW 69.50.4013 (2015), throughout this opinion.

4

In addition to the facts set out above, Hook listened to the recording of Gonzalez's call to her from the jail as it was played for the jury and testified about it. Hook testified that she loved Gonzalez and that it was hard for her to testify. When the State asked her what she meant when she told Gonzalez during the phone call that it would be hard for her to say that she had given him permission to drive the Jeep, Hook responded, "What -- what I meant was it would be hard for me to say that I had given him permission. I mean, after we called the police and all of that, I can't go back and then say I gave you permission. I would look like a dumbass." 3 RP at 215. When the State asked Hook if she had at some point considered trying to help Gonzalez "get out of all of this," Hook responded, "Get out of jail? No, I couldn't; that's my mom -- I mean, my mom's car. I mean, I love him, but that's my parent." 3 RP at 215-16.

On cross-examination, defense counsel asked Hook if she thought Gonzalez "was actually trying to get [her] to change what [she] would otherwise say." 3 RP at 217. Hook responded, "I think that he was just talking because he knows that I would not do that. I mean, I don't know what he -- I really can't say. He knows I wouldn't change my mind. He knows me well enough." 3 RP at 217. She stated that she was "hard-headed," so it did not matter what Gonzalez said. 3 RP at 217.

Hook acknowledged that during the call, she told Gonzalez that "the most difficult thing for [her] to do [was] being apart from him." 3 RP at 234. She also acknowledged she knew that if she did not say she gave him permission to take the car, they could end up being apart longer, perhaps as long as 6 to 15 years.

Hook further testified that although she knew that Salyers did not want Gonzalez driving the Jeep, she (Hook) had occasionally allowed him to drive the Jeep when it was in her possession

5

until Salyers found out about it.  But Hook stated that Gonzalez knew he was not supposed to drive the Jeep.  And at no point did Hook testify that she gave Gonzalez permission to drive the Jeep on the night it was taken.

When the police officers who arrested Gonzalez testified, they stated that they believed the white substance they found in his pocket was methamphetamine and that a field test confirmed this suspicion.  Neither officer mentioned cocaine or any drug other than methamphetamine.  But a forensic scientist later testified that the white substance found in Gonzalez's possession contained both methamphetamine and cocaine.

In their closing arguments, neither party mentioned cocaine.  But defense counsel referred the jury to the forensic scientist's testimony, arguing, "The drugs we have just -- we found them in his pocket.  It's not really anything, except those are in his pocket.  That's in his pocket, that's in his possession.  You heard from a tech that those are drugs; that's [unlawful possession of a controlled substance].  Okay."  3 RP at 319.

The to-convict instruction for the unlawful possession of a controlled substance charge provided,[2]

> To convict the defendant of the crime of possession of a controlled substance, as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1)  That on or about the 21st day of September, 2015, the defendant possessed *a controlled substance*; and
> (2)  That this act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

---

[2] Neither party objected to any jury instructions.

CP at 32 (emphasis added). The instruction did not identify the type of controlled substance, but it did refer to the offense "as charged in Count II." CP at 32.

In addition, jury instruction 17 stated, "It is a crime for any person to possess a controlled substance." CP at 31. And jury instruction 20 stated, "Methamphetamine is a controlled substance." CP at 34. There was no similar instruction stating that cocaine or any drug other than methamphetamine was also a controlled substance.

The jury found Gonzalez guilty of unlawful possession of a controlled substance and tampering with a witness.[3] Gonzalez appeals.

## ANALYSIS

### I. MISSING ESSENTIAL ELEMENT

Gonzalez argues that under *State v. Clark-El*, 196 Wn. App. 614, 384 P.3d 627 (2016), the to-convict instruction for the unlawful possession of a controlled substance charge omitted an essential element because it did not identify the type of controlled substance he possessed. He further argues that under the Washington Constitution, this error is not subject to a harmless error analysis. We hold that (1) the identity of the controlled substance is an essential element of the offense, (2) the trial court erred when it omitted this element from the to-convict jury instruction, (3) as to the conviction, harmless error analysis applies to this error under the Washington Constitution, (4) as to the conviction, this error was harmless, (5) as to the sentence, harmless error

---

[3] The jury was unable to reach a unanimous verdict on the theft of a motor vehicle and hit-and-run charges. Those charges are not at issue in this appeal.

does not apply to an unauthorized sentence, and (6) the trial court erred in imposing a sentence not authorized by the jury's findings.

## A. LEGAL PRINCIPLES

"We review the adequacy of a challenged 'to convict' jury instruction de novo." *State v. Mills*, 154 Wn.2d 1, 7, 109 P.3d 415 (2005) (citing *State v. DeRyke*, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003)). Because it "'serves as a yardstick by which the jury measures the evidence to determine guilt or innocence,'" a to-convict instruction must contain all essential elements of the charged crime. *DeRyke*, 149 Wn.2d at 910 (internal quotation marks omitted) (quoting *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997)). "[A] reviewing court may not rely on other instructions to supply the element missing from the 'to convict' instruction." *DeRyke*, 149 Wn.2d at 910. "[T]he omission of an element of a charged crime is a manifest error affecting a constitutional right that can be considered for the first time on appeal." *State v. Richie*, 191 Wn. App. 916, 927, 365 P.3d 770 (2015) (citing *Mills*, 154 Wn.2d at 6).

## B. IDENTITY OF CONTROLLED SUBSTANCE IS AN ESSENTIAL ELEMENT

Relying on *Clark-El*, Gonzalez contends that because RCW 69.50.4013 imposes different statutory maximum sentences for possession of certain quantities of marijuana and otherwise authorizes possession of recreational and medical marijuana, the identity of the controlled substance that the defendant possessed is an essential element of the crime of unlawful possession of a controlled substance. We agree.

Case law has long established that the identity of a controlled substance is an essential element when it increases a defendant's maximum sentence. *State v. Goodman*, 150 Wn.2d 774, 785-86, 83 P.3d 410 (2004). Two cases addressing whether the identity of the controlled substance

is an essential element in a charge for unlawful possession of a controlled substance with intent to deliver have confirmed this principle.

The first of these cases is *State v. Sibert*, 168 Wn.2d 306, 230 P.3d 142 (2010) (plurality opinion). Although there is no majority opinion in *Sibert*, the four justices who signed the lead opinion and the four justices who signed the two dissents all agreed that in the context of an unlawful delivery of a controlled substance charge, "[t]he identity of a controlled substance is an essential element where it increases the maximum sentence."[4] 168 Wn.2d at 311 (lead opinion), 318 (Alexander, J., dissenting), 327 (Sanders, J., dissenting). In the second case, *Clark-El*, Division One of this court similarly acknowledged that "[w]hen a defendant is charged with delivering a controlled substance, the identity of the substance is an essential element that must be stated in the to-convict instruction if it increases the maximum sentence the defendant will face upon conviction." 196 Wn. App. at 617.

*Clark-El* is particularly relevant here. A jury convicted Clark-El of unlawful delivery of a controlled substance under RCW 69.50.401(2)(b). *Clark-El*, 196 Wn. App. at 618. RCW 69.50.401(2) expressly provides that possession of different classes of controlled substances result in different maximum sentences. RCW 69.50.401(2)(a)-(e).[5] Following *Sibert*'s plurality opinion

_____

[4] A ninth justice concurred with the lead opinion in result only. *Sibert*, 168 Wn.2d at 317.

[5] RCW 69.50.401 provides in part,

> (1) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
> (2) Any person who violates this section with respect to:
> (a) A controlled substance classified in Schedule I or II which is a narcotic drug or flunitrazepam, including its salts, isomers, and salts of isomers, classified in Schedule IV, is guilty of a *class B felony* and upon conviction may be imprisoned for not more than ten years, or (i) fined not more than twenty-five thousand dollars

and *Goodman*, Division One held that because RCW 69.50.401 imposed different statutory maximums based on the identity of the controlled substance, the identity of the controlled substance was an essential element. *Clark-El*, 196 Wn. App. at 618.

Here, Gonzalez was charged under RCW 69.50.4013, which provides,

(1) It is unlawful for any person to possess a controlled substance[6] unless the substance was obtained directly from, or pursuant to, a valid prescription or order

if the crime involved less than two kilograms of the drug, or both such imprisonment and fine; or (ii) if the crime involved two or more kilograms of the drug, then fined not more than one hundred thousand dollars for the first two kilograms and not more than fifty dollars for each gram in excess of two kilograms, or both such imprisonment and fine;
    (b) Amphetamine, including its salts, isomers, and salts of isomers, or methamphetamine, including its salts, isomers, and salts of isomers, is guilty of a *class B felony* and upon conviction may be imprisoned for not more than ten years, or (i) fined not more than twenty-five thousand dollars if the crime involved less than two kilograms of the drug, or both such imprisonment and fine; or (ii) if the crime involved two or more kilograms of the drug, then fined not more than one hundred thousand dollars for the first two kilograms and not more than fifty dollars for each gram in excess of two kilograms, or both such imprisonment and fine. Three thousand dollars of the fine may not be suspended. As collected, the first three thousand dollars of the fine must be deposited with the law enforcement agency having responsibility for cleanup of laboratories, sites, or substances used in the manufacture of the methamphetamine, including its salts, isomers, and salts of isomers. The fine moneys deposited with that law enforcement agency must be used for such clean-up cost;
    (c) Any other controlled substance classified in Schedule I, II, or III, is guilty of a *class C felony* punishable according to chapter 9A.20 RCW;
    (d) A substance classified in Schedule IV, except flunitrazepam, including its salts, isomers, and salts of isomers, is guilty of a *class C felony* punishable according to chapter 9A.20 RCW; or
    (e) A substance classified in Schedule V, is guilty of a *class C felony* punishable according to chapter 9A.20 RCW.
(Emphasis added.)

[6] For the purposes of ch. 69.50 RCW, a controlled substance is defined as "a drug, substance, or immediate precursor included in Schedules I through V as set forth in federal or state law, or federal or commission rules." RCW 69.50.101(e). Marijuana is a Schedule I drug under both state and federal law. RCW 69.50.204(c)(22); 21 C.F.R. § 1308.11(d)(23).

of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter.

(2) *Except as provided in RCW 69.50.4014, any person who violates this section is guilty of a class C felony punishable under chapter 9A.20 RCW.*

(3)(a) The possession, by a person twenty-one years of age or older, of useable marijuana, marijuana concentrates, or marijuana-infused products in amounts that do not exceed those set forth in RCW 69.50.360(3) *is not a violation of this section, this chapter, or any other provision of Washington state law*.

(b) The possession of marijuana, useable marijuana, marijuana concentrates, and marijuana-infused products being physically transported or delivered within the state, in amounts not exceeding those that may be established under RCW 69.50.385(3), by a licensed employee of a common carrier when performing the duties authorized in accordance with RCW 69.50.382 and 69.50.385, *is not a violation of this section, this chapter, or any other provision of Washington state law*.

(4) No person under twenty-one years of age may possess, manufacture, sell, or distribute marijuana, marijuana-infused products, or marijuana concentrates, regardless of THC concentration. This does not include qualifying patients with a valid authorization.

(5) The possession by a qualifying patient or designated provider of marijuana concentrates, useable marijuana, marijuana-infused products, or plants in accordance with chapter 69.51A RCW *is not a violation of this section, this chapter, or any other provision of Washington state law*.

(Emphasis added.) RCW 69.50.4014,[7] referenced in RCW 69.50.4013(2) above, provides,

"Except as provided in RCW 69.50.401(2)(c)[8] or as otherwise authorized by this chapter, any

person found guilty of possession of forty grams or less of marijuana is guilty of a *misdemeanor*."

(Emphasis added.) And RCW 69.50.4013(3) and (5) exclude the lawful possession of recreational

and medical marijuana and impose no penalty for such possession.

---

[7] The legislature amended RCW 69.50.4014 effective October 1, 2015. LAWS OF 2015 2nd Spec. Sess., ch. 4, § 505. Because this amendment is not relevant to our analysis, we cite to the current version of this statute.

[8] RCW 69.50.401(2)(c) provides that possession of controlled substances classified in Schedule I, II, or III that are not otherwise addressed in RCW 69.50.401(2)(a) and (b) is a class C felony.

The State acknowledges that "in drug cases where the penalty for an offense is enhanced because of the identity of the drug, the identity of the drug is an essential element of the crime."[9] Br. of Resp't at 15. But it argues that RCW 69.50.4013 did not impose different penalties based on the identity of the substance, so the identity of the substance is not an essential element. This argument ignores the fact that, like the unlawful delivery statute, RCW 69.50.4013 does not impose the same maximum sentence for the possession of *all* controlled substances. The effect of RCW 69.50.4013(2)'s reference to RCW 69.50.4014 is to establish that the unlawful possession of 40 grams or less of marijuana is considered a misdemeanor, with a statutory maximum sentence of 90 days, rather than a class C felony, with a statutory maximum sentence of 5 years. *See* RCW 9A.20.021(1)(c), (3). And the effect of RCW 69.50.4013(3) and (5) is to exclude certain categories of possession of marijuana from punishment altogether.

Although structured differently than RCW 69.50.401 in that it does not contain subsections expressly describing different penalties for different categories of controlled substances, RCW 69.50.4013(2), (3), and (5) have the effect of imposing different maximum sentences based on the type and amount of the controlled substance possessed. Without specifying the identity of the controlled substance, the to-convict instruction could allow the jury to convict a defendant and

---

[9] The State also argues that the omission of the identity of the controlled substance from the to-convict instruction should be treated like the omission of a definition of a crucial term rather than the omission of an element. But the *definition* of controlled substance is not at issue here. Marijuana is clearly included in the definition of a controlled substance for purposes of ch. RCW 69.50 RCW. *See* RCW 69.50.101(e); RCW 69.50.204(c)(22); 21 C.F.R. § 1308.11(d)(23). The effect of RCW 69.50.4013(2) is to treat possession of different types and amounts of certain controlled substances differently, and the effect of subsections (3) and (5) is to otherwise authorize possession of marijuana under specific circumstances, not to define what a controlled substance is. Accordingly, we reject this argument.

impose a class C sentence based on the possession of *any* controlled substance, including any amount of marijuana. Thus, we hold that the identity of the controlled substance is an essential element of this offense. We now turn to whether the omission of this essential element was error.

## C. OMISSION WAS ERROR

In *Sibert*, the lead opinion held that even though the identity of the controlled substance was an essential element, the omission of this essential element from the to-convict instructions was "not error" because (1) the to-convict instructions incorporated the drug's identity by reference to the charging document, (2) the charging document specifically identified the substance as methamphetamine, (3) the State proved methamphetamine and only methamphetamine at trial, and (4) methamphetamine was the only controlled substance mentioned by either party during closing arguments. 168 Wn.2d at 309, 310-11, 313; *see also* 168 Wn.2d at 318-19 (Alexander, J., dissenting) (acknowledging that the lead opinion held that "it was not error for the trial court to omit the identity of the controlled substance from the 'to convict' instructions given in this case."). But only four justices agreed to this part of the lead opinion; and the four dissenting justices agreed that the omission was error. *Sibert*, 168 Wn.2d at 317 (lead opinion), 318, 325-26 (Alexander, J., dissenting), 334 (Sanders, J., dissenting). The ninth justice concurred in the lead opinion's result only. *Sibert*, 168 Wn.2d at 317. Thus, despite the similarities between this case and *Sibert*, because there is no majority opinion adopting any analysis on this issue, *Sibert* does not control whether the omission of the essential element of the identity of the controlled substance is error. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 302, 88 P.3d 390 (2004) ("A plurality opinion has limited precedential value and is not binding on the courts.").

In *Clark-El*, Division One recognized that *Sibert* did not result in binding law on this issue and held that the omission of the essential element of the identity of the controlled substance in the to-convict instruction was error. 196 Wn. App. at 619-20. For the reasons given in *Clark-El*, we agree with Division One that under existing case law, the omission of an essential element in a to-convict instruction is error. 196 Wn. App. at 620; *see also Mills*, 154 Wn.2d at 8 (except in certain situations where bifurcation of certain elements is necessary to protect the defendant's rights, "an instruction that purports to be a complete statement of the crime must in fact contain every element of the crime charged"); *Smith*, 131 Wn.2d at 262-63; *State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953); *Richie*, 191 Wn. App. at 921-23, 927-28. Accordingly, we hold that the omission of the essential element of the identity of the controlled substance from the to-convict instruction is error.

## D. Harmful Error

Having determined that the to-convict instruction was improper, we next turn to whether, under the Washington Constitution, this error is subject to a harmful error analysis in both the conviction and sentencing contexts. We hold that harmless error analysis applies in the conviction context but that an unauthorized sentence is not subject to a harmless error analysis.

Gonzalez argues that article I, sections 21 and 22 of the Washington Constitution provide greater protection than the federal constitution and that under these provisions the omission of an essential element from a to-convict instruction requires automatic reversal and cannot be harmless as to either the conviction or his sentence. He acknowledges that current case law establishes that harmless error applies under the federal constitution, but he contends that the Washington courts have never addressed whether the Washington Constitution offers more protection. And he further

argues that we should follow the lead of the New Hampshire and Mississippi courts and hold that harmless error does not apply in this context. Gonzalez's arguments are identical to those presented in *Clark-El*. *See* 196 Wn. App. at 619-25.

When addressing whether harmless error applies as to the defendant's conviction, the *Clark-El* court rejected these arguments and held that under the Washington Constitution, harmless error analysis applies as to the conviction. 196 Wn. App. at 617, 621-24. But the court also held that harmless error does not apply to the sentencing consequences because the sentence was not authorized by the jury's findings. *Clark-El*, 196 Wn. App. at 624-25. Neither Gonzalez nor the State attempts to show why the analysis in *Clark-El* was incorrect, and neither presents any arguments not considered in *Clark-El*. Having reviewed *Clark-El*, we find Division One's decision persuasive and adopt its harmless error analysis. Accordingly, we hold that the error in omitting the essential element of the identity of the controlled substance is subject to harmless error analysis as to the conviction but that an unauthorized sentence is not subject to a harmless error analysis.

1.    APPLICATION OF HARMLESS ERROR TO CONVICTION

"A jury instruction that omits an essential element is harmless if it appears beyond a reasonable doubt the error did not contribute to the verdict." *Clark-El*, 196 Wn. App. at 620 (citing *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002)). "The omitted element must be supported by 'uncontroverted evidence,' and the reviewing court must be able to 'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'" *Clark-El*, 196 Wn. App. at 620 (internal quotation marks omitted) (quoting *Brown*, 147 Wn.2d at 341).

Here, although the State presented evidence of both cocaine and methamphetamine, the presence of methamphetamine was uncontroverted. There was no evidence that would have allowed the jury to find that Gonzalez possessed 40 grams or less of marijuana or that he lawfully possessed recreational or medical marijuana. The to-convict instruction also referred the jury to count II of the information, which clearly specified possession of methamphetamine, and the only controlled substance referred to by the jury instructions was methamphetamine. Given these facts, we hold that the error in the to-convict instruction was harmless beyond a reasonable doubt because the omitted element is supported by "uncontroverted evidence," and we are able to conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error. Accordingly, we affirm the unlawful possession of a controlled substance conviction.

2.    SENTENCING

Gonzalez argues that even if we affirm the conviction, this case must be remanded for resentencing. He contends that because the jury's verdict did not specify the controlled substance Gonzalez unlawfully possessed, the only authorized sentence is "the lowest possible sentence for possession of a controlled substance, which is a misdemeanor." Br. of Appellant at 25. We agree.

"'The constitutional right to jury trial requires that a sentence must be authorized by a jury's verdict.'" *Clark-El*, 196 Wn. App. at 624 (quoting *State v. Morales*, 196 Wn. App. 106, 109, 383 P.3d 539 (2016), *review denied*, 187 Wn.2d 1015 (2017)). "If a court imposes a sentence that is not authorized by the jury's verdict, harmless error analysis does not apply." *Clark-El*, 196 Wn. App. at 624-25 (citing *State v. Williams-Walker*, 167 Wn.2d 889, 900-01, 225 P.3d 913 (2010)).

16

Here, under the existing jury instructions, the jury found that Gonzalez possessed only "a controlled substance"; the jury's verdict did not include a finding regarding the identity of the controlled substance because that element was omitted from the jury instruction.[10] Without a finding regarding the nature of the controlled substance, the jury's verdict did not provide a basis upon which the trial court could impose a sentence based on possession of methamphetamine. *Clark-El*, 196 Wn. App. at 624 (sentencing judge must impose the lowest possible sentence when the jury's verdict was based on a finding that the defendant was guilty of the delivery of *a* controlled substance and did not specify the exact nature of the controlled substance). "The jury's finding that [Gonzalez possessed] an unidentified 'controlled substance' authorized the court to impose only the lowest possible sentence for [unlawful possession of a controlled substance]." *Clark-El*, 196 Wn. App. at 624. Thus, Gonzalez is correct that resentencing on the unlawful possession of a controlled substance conviction to impose a misdemeanor sentence is required.

## II. SUFFICIENCY OF THE EVIDENCE

Gonzalez next argues that the evidence was insufficient to support the witness tampering conviction because (1) he asked Hook to speak to his investigator and never discussed her testimony and (2) there was no evidence he was asking Hook to testify falsely. We disagree.

---

[10] Here the to-convict jury instruction referenced the charging document. The charging document identified the controlled substance as methamphetamine. The dissent appears to rest on this fact. Dissent at 20. It is true that in *Clark-El* there was no such incorporation of the charging document. But the to-convict jury instruction's reference to the charging document is not a cure for an unauthorized sentence. The jury verdict here authorized a sentence for only a "controlled substance." And if the trial court imposes a sentence that is not authorized by the jury's verdict, harmless error analysis does not apply. *Williams-Walker*, 167 Wn.2d at 900-02.

A. STANDARD OF REVIEW

We review a claim of insufficient evidence for "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). An appellant challenging the sufficiency of evidence "necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from [that evidence]." *Drum*, 168 Wn.2d at 35 (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Circumstantial and direct evidence are equally reliable in determining sufficiency of the evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

B. TESTIMONY

Gonzalez argues that the State failed to prove that he was attempting to influence Hook to *testify* falsely because he asked her to tell the *defense investigator* only something different than she told the police. He asserts that speaking to the defense investigator is not the equivalent of testimony.

But Gonzalez's request that Hook tell the defense investigator a different story than she told the police would have little effect if it did not also imply that Hook needed to also be willing to testify consistently with what she told the defense investigator. Thus, a rational finder of fact could have easily found that Gonzalez was attempting to influence Hook's potential testimony.[11]

---

[11] Gonzalez relies on *State v. Pella*, 25 Wn. App. 795, 797, 612 P.2d 8 (1980). *Pella* is not on point because it addresses only "[w]hether the complaining party was about to be called as a witness in an official proceeding within the meaning of RCW 9A.72.110," the intimidating a witness statute. 25 Wn. App. at 796. *Pella* does not address whether attempting to influence a witness's statements to a defense investigator can establish that a defendant was attempting to induce a potential witness to *testify* falsely or withhold *testimony* within the meaning of RCW 9A.72.120.

No. 48850-7-II

C.  FALSE TESTIMONY

Gonzalez also argues that there was insufficient evidence to establish that he asked Hook to testify *falsely*.  Again, we disagree.

At no point in her testimony did Hook testify that she had given Gonzalez permission to take the Jeep on September 18.  Instead, she testified that she dropped Gonzalez off, drove the Jeep home and parked it, and left the keys near the back door.  Although Gonzalez came into her bedroom the next morning, Hook did not testify that he asked for or that she gave him permission to drive the Jeep.  Taking this evidence in the light most favorable to the State, the jury could find that Hook's testimony established that Gonzalez took the Jeep without her permission and that Hook's testimony was truthful.  Given that Gonzalez asked Hook to state that she had given him permission, a rational finder of fact could have easily found that Gonzalez was asking Hook to testify falsely.

Accordingly, Gonzalez's insufficient evidence arguments fail, and we affirm his witness tampering conviction.  In sum, we affirm Gonzalez's convictions, but we remand for resentencing on the unlawful possession of a controlled substance conviction consistent with this opinion.

JOHANSON, P.J.

I concur:

LEE, J.

19

MELNICK, J. (dissent in part) — While I concur with the majority to affirm Leonel

Gonzalez's conviction for possession of a controlled substance, methamphetamine, I disagree that

he should be sentenced as though the conviction was for a misdemeanor possession of marijuana.

I would affirm the conviction and sentence.   I respectfully dissent.

The State charged Gonzalez in count II of both the original information and the amended

information with possession of a controlled substance, methamphetamine, a schedule II controlled

substance under the Uniform Controlled Substance Act.[12]   The probable cause declaration in

support of the charge clearly stated Gonzalez possessed methamphetamine.   At trial, the only

controlled substance discussed was methamphetamine, except for the mere mention by a forensic

scientist of cocaine.[13]   The "to convict" instruction specifically referenced count II of the

information.  The court instructed the jury that methamphetamine was a controlled substance.  The

court did not mention any other controlled substance in its instructions.   There is no mention of

marijuana in the trial.

This situation is similar to *State v. Sibert*, 168 Wn.2d 306, 313, 230 P.3d 142 2010, where

the defendant challenged both his conviction and sentence because the "to convict" jury instruction

did not specify the identity of the controlled substance.  The *Sibert* court found no error.

> Common sense supports this conclusion.   The jury considered only
> methamphetamine when it found that Sibert possessed and intended to deliver a
> controlled substance.  Methamphetamine was the only controlled substance in the
> charging document, the only controlled substance defined in the jury instructions, .
> . . . and the only controlled substance the prosecution proved beyond a reasonable
> doubt through expert testimony. . . .   Methamphetamine was also the only controlled
> substance mentioned by either party during closing arguments. . . .

---

[12] Ch. 69.50 RCW.

[13] The standard range sentence for possession of cocaine and possession of methamphetamine is
the same. RCW 9.94A.518.

> If the prosecution had been unable to convince the jury that Sibert was in possession and intended to deliver methamphetamine, there could have been no conviction. Thus, common sense as well as the incorporation by reference of the charging document into the "to convict" instructions supports Sibert's conviction of delivering and possessing the specific controlled substance at issue, methamphetamine. Consequently, there is no error in the "to convict" jury instructions that merits overturning Sibert's convictions and sentence.

*Sibert*, 168 Wn.2d at 313.

> [T]he jury had to find that the State met its burden of proof in regards to the elements "as charged." . . . The charging document specified methamphetamine as the only controlled substance involved in the crimes and accurately identified the maximum penalty associated with conviction of a methamphetamine violation. . . . Furthermore, methamphetamine was the only controlled substance defined as such in the jury instructions, the only substance the State sought to prove through expert testimony, and the only controlled substance mentioned in closing arguments. There was thus no *Blakely*[14] violation with respect to sentencing, after the jury found him guilty.

*Sibert*, 168 Wn. 2d at 314.

The majority relies on *State v. Clark-El*, 196 Wn. App 614, 384 P.3d 627 (2016), for its conclusion that we should affirm Gonzalez's conviction but sentence him as though he committed misdemeanor possession of marijuana. *Clark-El* is distinguishable from both *Sibert* and the present situation where the jury instruction incorporated the charging document by reference into the "to convict" instruction. In *Clark-El*, 196 Wn. App. at 619, the "to convict" jury instruction did not incorporate the charging document. For these reasons, I disagree with the majority on this issue.

*Sibert* is consistent with *State v. Williams*, 162 Wn.2d 177, 170 P.3d 30 (2007). In *Williams* the defendant unsuccessfully argued that the penalty classification of the underlying charge in a bail jump prosecution was an element. 162 Wn.2d at 182. The underlying charge was possession

---

[14] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

of a controlled substance. *Williams*, 162 Wn.2d at 182. The court rejected Williams's argument that the possession was for misdemeanor marijuana based on the charging document and the probable cause statement. *Williams* 162 Wn.2d at 188.

In *Clark-El*, the court affirmed the conviction for delivery of a controlled substance, methamphetamine. 196 Wn. App at 618, 625. It reversed the sentence and remanded the case with orders that the court would "impose only the lowest possible sentence for delivery of a controlled substance." *Clark-El*, 196 Wn. App. at 625. Likewise, in this case, the majority affirms Gonzalez's felony conviction for possession of a controlled substance, methamphetamine, but remands the case with orders that the court sentence Gonzalez for misdemeanor possession of marijuana. Both here and in *Clark-El* the courts affirmed convictions and then ordered the court to sentence for a crime other than the one which they affirmed. I disagree that a defendant should be sentenced for a crime other than the one for which he or she was convicted.

Lastly, the law is clear that a person convicted for the crime of possession of a controlled substance, methamphetamine, must be sentenced under the Sentencing Reform Act of 1981, chapter 9.94A RCW. "Adult felony sentencing in Washington is governed by the Sentencing Reform Act (SRA) of 1981, Chapter 9.94A RCW, as amended." CASELOAD FORECAST COUNCIL, 2016 WASHINGTON STATE ADULT SENTENCING GUIDELINES MANUAL 1, http://www.cfc.wa.gov/PublicationSentencing/SentencingManual/Adult_Sentencing_Manual_2016.pdf. "When a person is convicted of a felony, the court shall impose punishment as provided

in this chapter." RCW 9.94A.505(1). In this case, the majority affirms Gonzalez's felony conviction yet remands the case for resentencing as though it were a misdemeanor. This remand order is contrary to law. I would affirm the conviction and sentence.

For the reasons stated above, I respectfully dissent.

Melnick, J.