# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50517-7-II |
| Respondent, | consolidated with |
| v. | |
| JAMES ROBERT VINES, | |
| Appellant. | |
| In re Personal Restraint Petition of: | No. 52297-7-II |
| JAMES ROBERT VINES, | |
| Petitioner. | UNPUBLISHED OPINION |
| v. | |

MELNICK, J. — James R. Vines appeals his conviction for attempting to elude a pursuing police vehicle. He argues that insufficient evidence supports his conviction, that the trial court abused its discretion by failing to subject him to a mental health evaluation, and that he received ineffective assistance of counsel.[1]

In a consolidated personal restraint petition (PRP), Vines contends that he received ineffective assistance of counsel because his trial attorney failed to introduce relevant evidence

---

[1] Vines also assigns error to the trial court's adoption of the statement of probable cause into its findings of fact. However, he does not provide any substantive argument as to this assignment of error so we do not address it. RAP 10.3(a)(6); *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012).

and failed to use it to cross-examine the deputies. He also contends that the prosecutor committed misconduct by eliciting false testimony from the deputies.

In a statement of additional grounds (SAG), Vines contends that the prosecutor violated *Brady v. Maryland*[2] by failing to disclose evidence and makes several duplicative arguments with his PRP. He also claims that the verbatim report of proceedings is inaccurate and requests that we authenticate it with video and audio from the trial.

We conclude that insufficient evidence exists to support Vines's conviction for attempting to elude because the State failed to produce any evidence that the police vehicle was equipped with sirens. Accordingly, we reverse and remand with instructions for the trial court to vacate Vines's conviction and enter a conviction for and resentence Vines on the lesser included offense of refusal to cooperate with an officer.

FACTS

I.     INCIDENT

On the night of October 21, 2016, Clallam County Deputy Paul Federline responded to a report of an assault in Port Angeles. He arrived at a residence which had a driveway, approximately 300 feet in length, that started at the top of a hill. While Federline searched for the assault suspect, a vehicle pulled onto the property. Thinking the suspect drove the vehicle, Federline yelled, "stop, police." Report of Proceedings (RP) at 246. Federline wore his uniform.

The vehicle accelerated down the driveway away from Federline and he ran after it. Near the bottom of the driveway, the vehicle did a three-point turn and then drove back up the driveway towards the road. As it passed, Federline recognized the driver as Vines, whom he knew by sight. Federline intended to arrest Vines because he knew that Vines had an outstanding warrant.

---

[2] 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Federline again yelled, "stop, police," but Vines continued driving. RP at 250. Federline had to get out of the way to avoid being hit by Vines's vehicle.

Clallam County Sergeant John Hollis had also responded to the residence and had parked at the top of the driveway. He was in uniform, and drove a marked car with sheriff's office stickers and a light bar. Hollis described the vehicle he drove as "quite an Explorer." RP at 305. It had overhead lights, spotlights, and flood lights. Hollis did not say whether the vehicle was equipped with sirens.

Federline radioed Hollis and told him a vehicle was leaving the residence. Hollis then heard Federline yell "stop, police." RP at 307. Hollis saw Vines's vehicle coming up the driveway toward him.

Hollis turned his vehicle's overhead lights on and drove toward Vines's vehicle as it drove toward him. Hollis shined his spotlight on Vines. Vines's vehicle seemed to be weaving back and forth in the driveway in an attempt to go around Hollis's vehicle, so Hollis mimicked Vines's vehicle's movements in order to block him. Hollis thought Vines was going to hit him but the vehicles stopped with inches between their bumpers.

Vines then put his vehicle into reverse and accelerated back down the driveway. Federline again dived out of the way to avoid being hit. Vines's vehicle got stuck on an embankment to the side of the driveway and stopped, but Federline could still hear the engine running and the wheels turning.

Because Federline could not open Vines's passenger side door, Hollis told him to break the window. He did. Vines then put his hands up and said, "okay, okay." RP at 269. Federline placed Vines under arrest and asked why he had run and Vines answered that he was scared.

3

A witness opined that the above events all took place over about a minute and a half.

A computer aided dispatch (CAD) narrative from that night began with the call to investigate the assault, but later contained information related to Vines. The CAD indicated that police arrested Vines ninety-seven seconds after his vehicle approached the residence. It also suggested that he would be charged with felony assault.

The State charged Vines with one count of attempting to elude a pursuing police vehicle.

II.     TRIAL

Federline and Hollis testified at trial to the above facts. Neither party admitted the CAD nor argued anything about its contents.

The trial court's instructions to the jury stated that, to convict Vines of attempting to elude, it must find beyond a reasonable doubt that "the signaling police officer's vehicle was equipped with lights and siren" and that "while attempting to elude a pursuing police vehicle, the defendant drove the vehicle in a reckless manner." Clerk's Papers (CP) at 88. The court also instructed the jury on the lesser included offense of refusing to give information or cooperate with an officer. The jury found Vines guilty of attempting to elude.

III.    VINES'S MENTAL CONDITION

Before the trial court appointed Vines counsel, an attorney who represented Vines at his first appearance noted that Vines had previously been found not guilty by reason of insanity. The attorney suggested that there was "at least reason to believe that whoever is assigned counsel may wish to initiate a competence evaluation." RP at 11.

Vines's first assigned counsel withdrew from the case. Before withdrawing, he told the court that if his pending motion to suppress evidence was denied, Vines would require "extensive and intensive mental health evaluations." RP at 21. At that same hearing, Vines said "I wonder,

in the interest of saving time, Your Honor, if we could have an evaluator come into [sic] evaluate my mental health?" RP at 25. His attorney said that would probably happen with new counsel because it would be unnecessary if the pending motion to suppress succeeded.

Before withdrawing, the same attorney later stated that "these cases, I suppose, are going to require a lot of mental health evaluations or at least I don't know about a lot of evaluations, but rather intensive and extensive ones." RP at 52.

At a subsequent hearing, Vines's new attorney stated that Vines "would like to have a mental health evaluation. He doesn't believe he's maybe competent to go to trial." RP at 82. Vines immediately interjected: "Oh, no, I believe I'm competent to go to trial, but I believe there's issues that come into sentencing, when it comes to sentencing." RP at 82. The trial court, Vines, and his attorney agreed that the issue could wait until after trial since it would concern sentencing.

Throughout the case, Vines sent numerous letters to the trial court describing events from his life history, accusing the police, the prosecutor, and his attorney of lying and conspiring against him, and requesting a lie detector test. He stated that he had severe mental health issues.

Vines frequently interjected his thoughts about the case and details about the evidence during court proceedings. In various hearings before trial, Vines demonstrated that he understood that the prosecutor's preplanned vacation caused delays and the difference between pleading guilty and going to trial. At one point, he and his attorney had a conversation discussing their trial strategy on the record. Vines did not make any disruptive comments on the record during the trial.

A.      POST-CONVICTION HEARING

After the jury found Vines guilty, his lawyer requested a presentencing mental health evaluation. She agreed with the trial court's suggestion that she find an independent evaluator and then come to the court to get funds to pay for it.

5

At a hearing several weeks later, Vines's attorney stated that she knew a mental health evaluation of Vines had occurred in a previous 2010 or 2012 case. She also said that she did not see how the results of an evaluation would affect sentencing. She stated:

> I don't believe we had a competency issue when this matter first came before the court. There was not a claim that he didn't understand what was going on, which would have addressed his competency. We clearly didn't assert an insanity defense for the purposes of the charge. It was just a general denial.

RP at 417. The trial court, the prosecutor, and Vines's attorney all agreed that there would be little purpose to a mental health evaluation.

Vines then said he had been requesting a mental health evaluation for five months and that his attorney was ignoring him. He requested a mental health evaluation and a new attorney, and claimed that he had been misdiagnosed in his last mental health evaluation. The trial court denied the request for a new attorney and explained to Vines that the jury had found him guilty and that his attorney had done a good job representing him. Vines again stated that he had severe mental health issues.

Vines said his previous attorney had intended to get him a mental health evaluation and Vines, the trial court, and his attorney discussed the timeline of the beginning of the case and why Vines's previous attorney had not requested an evaluation. His trial counsel then filed a written motion for a psychological evaluation.

In ruling on the motion, the trial court stated:

> I'm not going to authorize another mental health evaluation or psychological evaluation. . . . I can find no legal basis for it. I mean, with that being said, I do think you have some mental health issues. I mean, I think I have some mental health issues. I think everyone has some. Yours seem to be real and bothersome to you, but when I look at this case, you know, the allegations came—this event happened October 21, 2016. We're in April of 2017, now. You've got two other cases and one of them . . . there was an evaluation done. You were found to be competent as of that time, which was September, 2014. You pleaded guilty in that case in March of 2015. In the other case here, . . . you pleaded guilty in March of

6

2015. You were sentenced in April of 2015. There's been no motion prior in this case for any sort of a mental health evaluation until after the jury convicted you of the crime that you were charged with. There's no basis at this point for the court to order it.

RP at 437-38. On April 27, 2017, the court sentenced Vines to a 26 month standard range sentence for attempting to elude a pursuing police vehicle.

IV.    APPEAL AND CrR 7.8 MOTION

Vines appealed his conviction to this court. [3]

On April 2, 2018, Vines moved to vacate his judgement and sentence in the trial court pursuant to CrR 7.8. PRP at 1. The trial court transferred the motion to this court to be consolidated with his direct appeal on May 1. We accepted the transfer as a PRP and consolidated it with the direct appeal.

ANALYSIS

I.    SUFFICIENCY OF EVIDENCE

Vines claims insufficient evidence exists to support the attempting to elude charge because the State presented no evidence that the pursuing police vehicle was equipped with a siren. [4]  We agree.

---

[3] Since Vines filed his appeal, he has addressed numerous letters to the court, primarily complaining about his appellate attorney. He titled one such letter "RAP 9.1 Motion" and requested relief based on an e-mail from the trial prosecutor he acquired via a public records request. Because represented parties do not have a right to file pro se motions, we do not respond to Vines's pro se motion. *See State v. Romero*, 95 Wn. App. 323, 327, 975 P.2d 564 (1999).

[4] Vines also contends that the State failed to prove beyond a reasonable doubt that Hollis "pursued" him and that the deputies' testimony about his tires was inconsistent with his vehicle being front-wheel drive. Because the State failed to produce any evidence that the police vehicle was equipped with sirens, we reverse on that basis and do not reach Vines's additional sufficiency of evidence arguments.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). In claiming insufficient evidence, "the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

The attempting to elude a police vehicle statute states:

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

RCW 46.61.024(1). The statute requires both that a pursuing officer be "in uniform" and his or her vehicle be "equipped with lights and sirens." RCW 46.61.024(1).

*State v. Naillieux*, 158 Wn. App. 630, 645, 241 P.3d 1280 (2010), held that an essential element of the crime of attempting to elude is that the pursuing police vehicle must be equipped with lights and sirens. The State must prove all essential elements of a crime beyond a reasonable doubt. *State v. Sibert*, 168 Wn.2d 306, 311, 230 P.3d 142 (2010).

In this case, Hollis described his vehicle as "[a] marked Ford Explorer Cross-Over. It's quite an Explorer." RP at 305. He testified that it was equipped with sheriff's office stickers, a light bar, overhead lights, spotlights, and flood lights. Federline testified that "[t]hese new patrol

8

vehicles, they're like Christmas trees, they have lights all over them." RP at 299. Neither deputy stated the vehicle was equipped with a siren.

The State contends that there was evidence in the record from which the jury could have inferred that Hollis's vehicle was equipped with sirens. We disagree and conclude that this case is similar to *State v. Hudson*, 85 Wn. App. 401, 932 P.2d 714 (1997). In *Hudson*, two police officers pursued the defendant in a marked patrol vehicle, but no evidence existed that the officers were in uniform. 85 Wn App. at 404. *Hudson* held that "[e]vidence that the officers were in a marked vehicle and that Hudson probably knew that they were police officers, without more, [was] insufficient to permit a rational trier of fact to infer beyond a reasonable doubt that these officers were in uniform." 85 Wn. App. at 405.

In the present case, although the deputies testified extensively about the lights on the new patrol vehicle, the State presented no evidence that it was equipped with a siren. Accordingly, insufficient evidence supported Vines's conviction.

Next, we consider the appropriate remedy. We may remand for sentencing on a lesser included offense where the trial court instructed the jury on the lesser included offense and the jury necessarily found the elements of that offense in finding the defendant guilty of the greater offense. *State v. Green*, 94 Wn.2d 216, 234-35, 616 P.2d 628 (1980). Here, the trial court instructed the jury on the lesser included offense of refusing to cooperate with an officer. That this charge is a lesser included offense is the law of the case. *See State v. Johnson*, 188 Wn.2d 742, 755, 399 P.3d 507 (2017) ("[J]ury instructions that are not objected to are treated as the properly applicable law for purposes of appeal.") (quoting *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005)).

Conviction for refusing to cooperate with an officer requires proof that Vines, while operating or in charge of a vehicle, refused or neglected to stop when requested to do so by a police officer. CP at 96; RCW 46.61.020(1). The jury necessarily found the elements of this lesser included crime when it decided the attempting to elude charge. Accordingly, we remand for the trial court to enter a conviction for and resentence on the lesser included offense of refusal to cooperate with an officer.

Because we remand for resentencing on the lesser included offense, we consider Vines's additional arguments.

II. COMPETENCY EVALUATION

Vines claims he was denied due process when the trial court failed to order a competency evaluation. Vines claims that the trial court abused its discretion by failing to order a competency evaluation before trial on its own initiative and by failing to do so before sentencing on motion of his trial counsel. We disagree.

A. LEGAL PRINCIPLES

"No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050. "'Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel.'" *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 862, 16 P.3d 610 (2001) (quoting *Godinez v. Moran*, 509 U.S. 389, 402, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993)). "'Incompetency' means a person lacks the capacity to understand the nature of the

10

proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect."[5]  RCW 10.77.010(15).

Trial courts are required to order a competency evaluation when "there is reason to doubt [the defendant's] competency." RCW 10.77.060(1)(a).  Whether to order a competency evaluation "rests generally within the discretion of the trial court."  *State v. Heddrick*, 166 Wn.2d 898, 903, 215 P.3d 201 (2009).  It should consider factors including the "'defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.'"  *Fleming*, 142 Wn.2d at 863 (quoting *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)).  If the trial court fails to "observe procedures adequate to protect an accused's right not to be tried while incompetent to stand trial," it denies the defendant's right to due process.  *Fleming*, 142 W n.2d at 863.

We review the decision whether to order a competency hearing for abuse of discretion. *State v. Sisouvanh*, 175 Wn.2d 607, 620, 290 P.3d 942 (2012).  Under this standard, we find error only if the trial court's decision "(1) adopts a view that no reasonable person would take and is thus 'manifestly unreasonable,' (2) rests on facts unsupported in the record and is thus based on 'untenable grounds,' or (3) was reached by applying the wrong legal standard and is thus made 'for untenable reasons.'"  *Sisouvanh*, 175 Wn.2d at 623 (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)) (internal quotations omitted).

---

[5] The test for incompetency is different from the test for insanity.  Insanity is an affirmative defense that relates to events occurring at the time of the commission of the offense.  RCW 9A.12.010. Competency is required before a person can even go to trial.  RCW 10.77.050.

B.     BEFORE TRIAL

Vines did not move for a competency evaluation prior to trial.  However, whenever "there is reason to doubt [the defendant's] competency, the court on its own motion or on the motion of any party," must appoint an expert to evaluate the defendant's mental health.  RCW 10.77.060(1)(a).  We consider whether the record suggests any reasons to doubt Vines's competency.

Vines took many actions in this case that he contends should have suggested to the trial court that he was incompetent to stand trial.  These actions included sending rambling letters to the court, his compulsive behavior in court, and his requests for a mental health evaluation.  None of these actions indicated that Vines could not either understand the nature of the proceedings or assist in his defense.

Throughout his courtroom outbursts, letters, and erratic behavior, Vines never seemed unable to understand the proceedings.  In many of his letters, he argued he was innocent, relayed his version of the facts of the case, and requested a lie detector test to prove his innocence.  Vines's focus on the facts, along with his insistence that the police were lying or conspiring against him, suggests that he was aware of the nature of the criminal charges.

In Vines's letters, he suggested legal strategies for his defense, including subpoenaing witnesses, taking a lie detector test, and confronting the deputies with specific inconsistencies in their stories.  He made statements on the record demonstrating his own recall of specific events earlier in the case, including that the proceedings had been delayed for the prosecutor's scheduled vacation.  Also on the record, Vines asked his attorney about witnesses she had interviewed and whether she had read letters he sent her.  He also stated his intent to go to trial.  These acts

12

demonstrate that Vines understood the nature of the proceedings and could assist his lawyer in his defense.

Vines's first appointed lawyer did not question Vines's competency. He opined that Vines would require "extensive and intensive" mental health evaluations, but decided to pursue a motion to suppress evidence before pursuing an evaluation. RP at 21. Later, his next attorney stated that Vines didn't "believe he's maybe competent to go to trial" and requested a mental health evaluation, but Vines stated "Oh, no, I believe I'm competent to go to trial." RP at 82.

The trial court did not abuse its discretion by failing to order a competency evaluation of Vines on its own initiative before trial because it had no reason to believe that Vines was incompetent to stand trial.

C. AFTER TRIAL

Vines additionally argues that the trial court abused its discretion by failing to order a competency hearing after Vines was found guilty but prior to his sentencing, when his trial counsel moved for a psychological evaluation. Vines contends that the additional letters he sent to the court between his conviction and sentencing gave the trial court a reason to doubt his competency. We disagree.

RCW 10.77.050 prohibits a court from sentencing an incompetent person.

After Vines's trial, his attorney moved for a psychological evaluation. Vines's post-conviction letters to the court indicate his understanding of and outrage at his situation. He repeatedly called the police liars, accused the attorneys and police of conspiring against him, and demanded a lie detector test. He also suggested that the court obtain testimony from another witness he claimed could exonerate him. None of the content of his letters indicated that Vines could not understand the nature of the proceedings or that he could not assist in his defense.

13

The trial court did not abuse its discretion when it did not order a post-conviction competency evaluation.

III.   INEFFECTIVE ASSISTANCE OF COUNSEL

In his direct appeal, Vines contends that he received ineffective assistance of counsel because his trial counsel did not move for a competency evaluation before trial.  In his PRP, he makes additional ineffective assistance of counsel arguments.

A.     LEGAL PRINCIPLES

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo.  *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).  To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant.  *Grier*, 171 Wn.2d at 32-33; *State v. Linville*, __ Wn.2d __, 423 P.3d 842, 847 (2018).  Representation is deficient if, after considering all the circumstances, the performance falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 446 U.S. at 688).  Prejudice exists if there is a reasonable probability that, except for counsel's errors, the results of the proceedings would have differed.  *Grier*, 171 Wn.2d at 34.  If either prong is not satisfied, the defendant's claim fails.  *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

A defendant faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

### B.     COMPETENCY

Vines contends that his trial counsel was ineffective for failing to request that his competency be evaluated prior to trial. He claims his trial counsel's conduct was deficient for failing to bring Vines's mental health problems to the court's attention and that this prejudiced him "because he was subjected to standing trial in violation of his due process right to a fair trial." Br. of Appellant at 21.

We give considerable weight to an attorney's opinion regarding the client's competency. *State v. Fedoruk*, No. 49975-4-II, slip op. at 10 (Wash. Ct. App. June 26, 2018), http://www.courts.wa.gov/opinions/.

As discussed above, nothing in the record demonstrates that Vines was unable to understand the nature of the proceedings or unable to assist in his defense. Accordingly, it was not deficient for his attorney not to move for a competency evaluation and the decision did not prejudice his case.

### C.     CAD

In his PRP, Vines claims that his trial counsel was ineffective for failing to introduce the CAD into evidence and use it to cross-examine the deputies.[6] The State responds that the CAD

---

[6] Vines also claims that his trial counsel "had ample opportunity to schedule a fact-finding hearing, move[ ] to suppress evidence, and request dismissal of the charges against Mr. Vines." PRP at 3. Vines does not provide any further argument as to why any of these actions was deficient nor how any prejudiced his case. We do not consider these claims of ineffective assistance. RAP 10.3(a)(6); *see Mason*, 170 Wn. App. at 384 (declining to consider passing treatment of an issue or lack of reasoned argument).

15

was not inconsistent with the deputies' testimony and that it would have been inadmissible as evidence for lack of relevance.

Vines must show both that his trial counsel's performance was deficient and that her deficiency prejudiced his case. *Grier*, 171 Wn.2d at 33. The standard for prejudice is the same on collateral attack as on direct appeal. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

Vines has attached the CAD to his PRP. However, he has not submitted any documents or other evidence showing that his trial counsel had access to the CAD at the time of trial. Neither the record nor any document attached to Vines's PRP establishes whether Vines's trial counsel had access to the CAD at or prior to trial. Accordingly, his trial counsel was not ineffective for failing to cross-examine the deputies with it or introduce it into evidence. There is no showing of deficiency or prejudice.

Assuming that Vines's trial counsel had the CAD at trial, nothing in the CAD contradicts the deputies' testimony. The CAD shows that the deputies identified Vines's vehicle at the site of the crime on the night of the crime and, ninety-seven seconds later, took Vines into custody. It also stated that Vines was charged with felony assault. It was conceivably a strategic decision not to introduce evidence that corroborates these elements of the deputies' story. It is also conceivable that Vines's trial counsel wanted to avoid admitting a document that associated her client with felony assault, a charge unrelated to the charged crime in the case.[7]

Vines contends that it is impossible for the events described by the deputies, from first observing his vehicle to placing him under arrest, to have occurred in ninety-seven seconds. He contends that the lack of information about Vines's flight in the CAD contradicts Federline's

---

[7] *Linville* does not affect this result. 423 P.3d at 847.

testimony that he "announced, over the radio, that a vehicle had taken off" on him. RP at 247. Without any background information about what a CAD is or what information it contains in the record, there is no reason to believe that lack of detail in the CAD contradicted Federline's testimony. Additionally, if the CAD did in fact show that the full incident lasted only ninety-seven seconds, that is not inconsistent with the deputies' testimony. Vines's witness testified that the entire encounter lasted about a minute and a half.

Vines's trial counsel was not ineffective for failing to introduce the CAD and use it to cross-examine the deputies.

IV.     PROSECUTORIAL MISCONDUCT

In his PRP, Vines contends that the prosecutor committed misconduct by eliciting material false testimony from the deputies. Vines does not specify any particular false testimony; he seems to be arguing all of the inculpatory evidence was false.

"Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012). An appellant claiming prosecutorial misconduct must demonstrate that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 759-61, 278 P.3d 653 (2012). "In a PRP, the petitioner must show actual and substantial prejudice by a violation of his or her constitutional rights or by a fundamental error of law." *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 482, 965 P.2d 593 (1998). "'Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard.'" *State v. Thorgerson*, 172 Wn.2d 438, 460, 258 P.3d 43 (2011) (quoting *State v. Brett*, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995)).

The State has a duty not to elicit perjury or present false evidence. *State v. Finnegan*, 6 Wn. App. 612, 616, 495 P.2d 674 (1972). To succeed on a claim that the prosecutor presented

false evidence, Vines must show (1) the testimony was actually false, (2) the prosecutor knew or should have known that the testimony was actually false, and (3) the false testimony was material. *See United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003).

Vines's only support for his argument that the testimony was false is the CAD. Because the CAD is not inconsistent with the deputies' testimony, Vines has not shown that the prosecutor knowingly elicited false testimony. We reject Vines's prosecutorial misconduct claim.

STATEMENT OF ADDITIONAL GROUNDS

I. BRADY VIOLATION

Vines contends that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by failing to disclose the CAD to his trial attorney.

*Brady* held that "'the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158 (2011) (quoting *Brady*, 373 U.S. at 87). To establish a *Brady* violation, Vines must show "'[1)] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued.'" *Mullen*, 171 Wn.2d at 895 (quoting *Strickler v. Green*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).

Vines's claim is unsupported in the record and fails. If Vines has evidence that the prosecutor did not disclose the CAD, that the CAD is exculpatory or impeaching, and that the prosecutor's failure to disclose it prejudiced his case, he may obtain review by attaching that

evidence to a personal restraint petition.[8] *See State v. McFarland*, 127 Wn.2d 322, 330, 899 P.2d 1251 (1995).

## II. PROSECUTORIAL MISCONDUCT

Vines contends that the prosecutor committed misconduct by deliberately misrepresenting the truth in his examination of the deputies and eliciting perjury. This claim is duplicative with the claim in Vines's PRP and it is addressed above. *See State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012) (Errors that have been thoroughly addressed by counsel are "not proper matters for [the] statement of additional grounds under RAP 10.10(a).").[9]

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Vines contends that his trial counsel was ineffective in her cross-examination of both deputies. Like the prosecutorial misconduct claims in his SAG, this argument is duplicative with arguments in his PRP that are addressed above and we do not consider it again.

## IV. INACCURATE REPORT OF PROCEEDINGS

Vines contends that the verbatim report of proceedings in this case are inaccurate and urges us to have them authenticated with video and audio from the trial. He does not produce any evidence of alteration other than his memory of the proceedings. We deny Vines's request.

---

[8] Vines has filed a personal restraint petition consolidated with this case in which he attached the CAD itself. However, he did not include any documents suggesting that any *Brady* elements are met.

[9] Vines's PRP is pro se, distinguishing his case from *Thompson*, where the defendant made SAG arguments duplicative with his counsel's brief. 169 Wn. App. at 493. The reasoning still applies as there is no reason for us to address the same argument more than once because Vines raises it in multiple locations.

CONCLUSION

We reverse Vines's conviction and remand to the trial court to vacate Vines's conviction and enter a conviction and resentence Vines on the lesser included offense of refusal to cooperate with an officer.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for the public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, J.

Lee, A.C.J.